UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | Case No. 13-11132-MER |
| | ) | |
| LSI RETAIL II, LLC | ) | |
| EIN: 20-0741627 | ) | Chapter 11 |
| | ) | |
|    Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | Case No. 13-11135-MER |
| | ) | |
| CONIFER TOWN CENTER, LLC | ) | Chapter 11 |
| EIN: 20-1517101 | ) | |
| | ) | |
|    Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | Case No. 13-11167-MER |
| | ) | |
| LAND SECURITIES INVESTORS, LTD., | ) | Chapter 11 |
| EIN: 84-1021913 | ) | |
| | ) | **Jointly Administered Under** |
|    Debtor. | ) | **Case No. 13-11132-MER** |
| | ) | |
| _____ | ) | |
| | ) | |

## MOTION FOR APPROVAL OF POST PETITION FINANCING

Conifer Town Center, LLC ("CTC"), LSI Retail II, LLC ("Retail, II"), and Land Securities Investors, Ltd., ("LSI") (together the "Debtors" or "Borrowers") in the above-captioned jointly administered chapter 11 cases ("Chapter 11 Cases"), by and through their undersigned attorneys, move the Court pursuant to 11 U.S.C. §§ 105, 361, 362 363(c), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), and Fed.R. Bankr P. 2002, 4001 and 9014 for entry of a final order ("Final Order") authorizing the Debtors to obtain up to $250,000.00 of post-petition financing ("DIP Facility") and the loan under such facility ( "DIP Loan") from TIC Lending, LLC ( "DIP Lender"), in the form of the Loan Agreement, Note, and Deeds of Trust attached to this Motion as Exhibits A, B, and C,

1

respectively, together with the Proposed Final Order ("DIP Facility Documents") and as grounds therefore state as follows:

1. On February 4, 2013, this Court entered an Order for the Joint Administration of the Debtors' Bankruptcy Cases. One of the salient factors that lead to the joint administration of the Bankruptcy Cases is also relevant here: LSI owns a 99% member interest in CTC and Retail II. Both CTC and Retail II are significant assets of the Debtor LSI. Accordingly, the successful reorganizations of CTC and Retail II directly and significantly impact LSI's prospect for success.

2. As summarized below and detailed in the DIP Facility Documents, the DIP Loan will allow the Debtors to obtain up to $250,000 (to be used by any of the Debtors, in amounts as each Debtor determines, but for a total amount of no more than $250,000).

3. The DIP Loan will be secured by two parcels of real property (identified in ¶5, below and Exhibit A of the Deeds of Trust attached as Exhibits A and B of this Motion) owned by LSI individually although the DIP Loan will be available to all the Debtors. LSI will be responsible for repayment of all obligations under the DIP Facility Documents; CTC and Retail II shall be severally responsible only for repayment of those obligations arising under the DIP Facility Documents on account of advances made to or for their respective benefit.

4. The Essential Terms of the DIP Facility are as follows:

a. The Debtors will immediately obtain the DIP Loan, subject to the terms of the DIP Facility Documents, in the principal amount of up to $250,000.00, dependent on the satisfaction of the conditions stated in the DIP Facility Documents. The DIP Lender shall have no obligation to make any loan or advance under the DIP Facility Documents unless the conditions precedent to make such advances under the DIP Facility Documents have been satisfied in full or waived in accordance with the provisions thereof.

b. Pursuant to the DIP Facility Documents, the DIP Lender will have an allowed superpriority administrative expense claim ("Superpriority Claim") pursuant to Bankruptcy Code section 364(c)(1), for all obligations of the Debtors under the DIP Facility Documents (collectively, the "DIP Obligations") having priority over any and all other administrative claims against the Debtors, now existing or hereafter arising. but the DIP liens shall expressly exclude any proceeds or property recovered in connection with

2

the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any ("Avoidance Actions.   No other superpriority claims shall be granted or allowed in the Chapter 11 Case.

      c.     The interest rate is ten (10) percent per annum and the DIP Loan will mature on the earlier of (a) the closing of a sale of the Collateral, (b) the effective date of any Plan of Reorganization confirmed in the Bankruptcy Court of any Borrower; or (c) December 31, 2013.

      d.     The Loan Agreement provides that the Lender must provide approval for the Debtors' (or any of them) proposed use of the loan proceeds in connection with each advance.

      e.     An "Event of Default" as defined in the DIP Facility Documents and the Proposed Order consists of the following:

          i.     Failure by the Debtors to make payment of principal, interest, fees, or other amounts under the DIP Facility when the same becomes due and payable; the occurrence of any Event of Default as defined in any DIP Facility Documents; any representation or warranty made by the Debtors in the Final Order, any DIP Facility Document or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with any DIP Facility Documents that is determined to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; the Debtors' breach or violate of any term, covenant or agreement contained herein; or

          ii.     Conversion of any Debtor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; the appointment of a trustee in any Debtor's Chapter 11 Case without the consent of the DIP Lender; the appointment of an examiner in any Debtor's Chapter 11 Cases with expanded powers without the consent of the DIP Lender; or the dismissal of any Debtor's Chapter 11 Case; or

          iii.     The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending this Order without the consent of the DIP Lender; or the attempt by any party in interest to vacate or modify this Order over the objection of the DIP

Lender; or any provision of the documents relating to the Postpetition Loans shall cease to be valid and binding on the Debtors, or the Debtors shall so assert in any pleading filed in any court; or

       iv.    The Debtors shall (i) bring or consent to any motion or application in the Chapter 11 Cases to obtain financing from any person other than the DIP Lender under section 364 of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under the DIP Facility); (ii) grant any lien that is *pari passu* or senior to any lien granted to the DIP Lender under this Final Order, except as permitted therein; or (iii)  grant a superpriority claim, other than that granted in this Final Order, which is *pari passu* with or senior to any of the claims of the DIP Lender against the Debtors hereunder; or

       v.    Any other party shall seek and obtain allowance of any order in the Chapter 11 Case to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral under section 506(c) of the Bankruptcy Code.

5.    The Collateral for the DIP Obligations is the real property generally described as Lot 119A-3, Chatfield Farms Filing 1-A, 3rd Amendment, Douglas County, Colorado, and that real property generally described as Lot 1 Jefferson Corporate Center, according to the Plan thereof recorded December 11, 1995 under Reception No. F0156911, Jefferson County, Colorado, together with any rents or revenues therefrom, and the proceeds thereof.  Pursuant to the DIP Facility, the Debtors grant the DIP Lender valid, enforceable, non-avoidable and fully perfected, first priority senior liens on and security interests (collectively, the "DIP Facility Post-petition Liens") in the Collateral.

6.    Any outstanding real estate taxes assessed against the Collateral that were incurred prior to the Debtors' bankruptcy filing on January 29, 2013 will be paid in accordance with the terms of the plan of reorganization confirmed in the Debtors' bankruptcy case.

**Good Cause Exists to Grant this Motion**

7.    Entry of this Order is in the best interests of the Debtors, their estates and creditors. The terms of the DIP Facility Documents are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are

4

supported by reasonably equivalent value and fair consideration.

8.      Because a debtor in possession is in the best position to assess the need for financing, the availability of financing, and the appropriateness of the financing terms, "[c]ourts have generally deferred to a debtor's business judgment in granting section 364 financing." *In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010).

9.      The Debtors require the financing described in the Motion to, among other things, fund the working capital and general corporate needs of the Debtors and the cost of the Chapter 11 Cases. If the Debtors do not obtain authorization to borrow under the DIP Facility Documents and the DIP Facility is not approved, the Debtors will be harmed. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code § 503, or other financing under Bankruptcy Code §§ 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Facility Documents based on the totality of the circumstances. Moreover, a loan facility in the amount provided by the DIP Facility Documents is not available to the Debtors without granting the DIP Lender, superpriority claims, senior liens, and security interests, pursuant to Bankruptcy Code §§ 364(c)(1), (2), (3) and 364(d), as provided in the DIP Facility Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility provided under the DIP Facility Documents represents the best financing package available to them and is in the best interests of the estates and their creditors. The adequate protection provided in the DIP Facility Documents and the proposed Order and other benefits and privileges contained therein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Collateral.

10.     The DIP Facility will primarily be used to pay costs and expenses that are already administrative expense claims in these cases and are held by creditors who need to be paid. As such, the DIP Facility will not impair unsecured creditors since the administrative expenses are already senior to such claims. The DIP Facility does not permit the DIP Lender to recover any payments made with the DIP Facility to creditors during the term of the loan.

11.     Pursuant to Local Bankruptcy Rule 4001-3, the proposed DIP Facility contains a provision of the sort identified in Loc.Bankr.R. 4001-3APP:

        a.      Modification of the automatic stay ( "Stay Modification")(provision (a)(8) on

5

Loc. Bankr. R. 4001-3APP).  The Stay Modification is located in the Proposed Order, concurrently lodged with this Motion, p. 10, ¶ 21.

      b.     Waiver of 11 U.S.C. §506(c)(provision (a)(4) on Loc. Bankr. R. 4001-3APP). The Debtors' waiver of 11 U.S.C. §506(c) is located in the Proposed Order, p. 8, ¶ 11.

      c.     Provisions binding the estate and parties in interest with respect to the priorities of the secured party's lien (provision (a)(3) on Loc. Bankr. R. 4001-3APP), Proposed Order, p. 7, ¶ 9.

      d.     No other provisions listed in Loc. Bankr. R. 4003-3APP are addressed in the DIP Facility.

WHEREFORE, the Debtors pray that the Court make and enter an Order in the form of the Order that was lodged concurrently with the filing of this Motion approving the loan transaction set forth in this Motion and for such further and additional relief as to the Court may appear proper.

Dated: August 5, 2013             Respectfully submitted,

By:_____
Lee M. Kutner #10966
**KUTNER BRINEN GARBER, P.C.**
303 East 17th Avenue, Suite 500
Denver, CO  80203
Telephone:  (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: lmk@kutnerlaw.com
**Attorneys for Land Securities Investors, Ltd.**

Jeffrey A. Weinman #7605
**Jeffrey A. Weinman, P.C.**
730 17th Street, Suite 240
Denver, CO 80202-3506
Telephone: (303) 572-1010
Telecopy: (303) 572-1011
E-Mail: jweinman@weinmanpc.com
**Attorneys for LSI Retail II, LLC and Conifer Town Center, LLC**

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "**Agreement**") is made and entered into as of _____, 2013 (the "**Effective Date**") by and between **LAND SECURITIES INVESTORS LTD.** a Colorado limited partnership ("**LSI**"), **LSI RETAIL II, LLC,** a Colorado limited liability company ("**Retail II**"), and **CONIFER TOWN CENTER, LLC,** a Colorado limited liability company ("**CTC**") (jointly, "**Borrowers**"), and **TIC LENDING, LLC** (the "**Lender**").

## RECITALS

A.     LSI filed a petition under Chapter 11 of the Bankruptcy Code on January 29, 2013, Bankruptcy Case No. 13-11167-MER, pending in the United States Bankruptcy Court for the District of Colorado.  Retail II filed a petition under Chapter 11 of the Bankruptcy Code on January 29, 2013, Bankruptcy Case No. 13-11132-MER, pending in the United States Bankruptcy Court for the District of Colorado.  CTC filed a petition under Chapter 11 of the Bankruptcy Code on January 29, 2013, Bankruptcy Case No. 13-11135-MER, pending in the United States Bankruptcy Court for the District of Colorado.

B.     The Lender has agreed to provide debtor in possession financing to the Borrowers on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and the loan to be made hereunder, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Lender and Borrowers hereby covenant and agree as follows:

**1.**     Unless the context otherwise requires and except as otherwise may be provided herein: (i) definitions contained in the Code (herein defined) shall apply to terms, words and phrases used herein, except that in case of any conflict between such definitions and definitions contained in Article 9 of the Code, the Article 9 definitions shall apply; (ii) the singular shall be deemed to include the plural and the plural shall be deemed to include the singular; and (iii) the terms as used herein shall be construed and controlled by the following definitions:

**1.1**     Bankruptcy Case.  "Bankruptcy Case" means the Chapter 11 bankruptcy case filed by each Borrower and pending in the Bankruptcy Court.

**1.2**     Bankruptcy Court.  "Bankruptcy Court" means the United States Bankruptcy Court for the District of Colorado.

**1.3**     Business Day.  "Business Day" shall mean that portion of any day, other than a Saturday, a Sunday or a legal holiday for commercial banks under the laws

**EXHIBIT A**

of the State of New York, during which Lender is open for substantially all of Lender's normal banking functions.

**1.4** <u>Collateral</u> "Collateral" shall mean Lot 119 A-3, Chatfield Farms Filing 1-A, 3rd Amendment, Douglas County, Colorado, and Lot 1 Jefferson Corporate Center, according to the Plat thereof recorded December 11, 1995, under Reception No. F0156911, Jefferson County, Colorado; together with any rents or revenues therefrom, and the proceeds thereof.

**1.5** <u>Deed of Trust.</u> "Deed of Trust" shall mean that certain Deed of Trust executed by LSI, dated of the date hereof, and securing the Loan to be made hereunder by the Collateral.

**1.6** <u>Default Interest Rate</u>. "Default Interest Rate" shall mean eighteen percent per annum (18%).

**1.7** <u>Event of Default</u>. "Event of Default" shall mean the occurrence of any of the events specified in Section 10 of this Loan Agreement.

**1.8** <u>Interest Rate</u>. "Interest Rate" shall mean ten percent per annum (10%).

**1.9** <u>Final Order</u>. "Final Order" shall mean a final order approving the advances to be made under this Loan Agreement entered by the Bankruptcy Court in each Bankruptcy Case, after appropriate notice and hearing, containing terms and conditions acceptable to Lender in its sole and absolute discretion.

**1.10** <u>Loan Agreement</u>. "Loan Agreement", and such terms as "herein", "hereof", "hereto", "hereby", "hereunder" and the like shall mean and refer to this Loan Agreement, together with any and all Exhibits attached hereto, and any and all supplements, modifications or amendments hereof.

**1.11** <u>Loan Documents</u>. "Loan Documents" shall mean this Loan Agreement, the Note, the Deed of Trust and all other instruments and documents executed or issued, or to be executed or issued, by Borrowers pursuant to this Loan Agreement or pursuant to any of said documents or in connection with the Loan, together with all amendments, modifications, extensions and renewals of any of the foregoing documents.

**1.12** <u>Maturity Date</u>. "Maturity Date" is defined in Section 3 below.

**1.13** <u>Note</u>. "Note" shall mean the promissory note issued to the Lender in accordance with Section 3 hereof.

**1.14** <u>Prepetition Obligations</u> "Prepetition Obligations" means those obligations of Borrowers to the Lender, pursuant to that Promissory Note dated January 28, 2013, made by Borrowers to Lender in the original principal amount of $200,000.00.

2

**2.**      TERM LOAN.  Lender hereby agrees to lend, and Borrowers agree to borrow, up to the total principal amount of Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) the "**Loan**"), subject to the terms and conditions set forth below, and for such purposes as may be agreed to by Borrowers and Lender at the time of each advance; *provided, however* that the Lender has no obligation to make any advances to Borrowers hereunder, and any advances made by Lender shall be made in its sole and absolute discretion.

**3.**      BORROWERS' NOTE.  Subject to all terms, conditions and covenants contained herein, and contemporaneous with the execution of this Agreement, Borrowers shall execute a Note in favor of the Lender.  Interest shall accrue on all outstanding principal and other outstanding amounts at the Interest Rate prior to an Event of Default, and at the Default Interest Rate upon occurrence of an Event of Default.   All outstanding principal, interest and other amounts due shall be due and payable on the earliest of (a) the closing of the sale of the Collateral; (b) the effective date of any Plan of Reorganization confirmed in the Bankruptcy Case of any Borrower; or (c) December 31, 2013 ("Maturity Date"). LSI shall be responsible for repayment of all obligations arising under the Loan Documents, including, but not limited to, the principal, accrued interest, and any and all fees and costs accrued on the Loan (the "**Obligations**").  Retail II and CTC shall be severally, but not jointly, liable for all Obligations arising under the Loan Documents on account of advances made to each, but neither shall be liable for any advances made solely for the benefit of any other Borrower.

**4.**      COLLATERAL SECURITY.  The performance of all covenants and agreements contained in this Loan Agreement and in the other documents executed or delivered as a part of this transaction, and the payment of the Note shall be secured as follows:

> **4.1**      Deed of Trust.  LSI shall execute and deliver to Lender a Deed of Trust in a form approved by Lender, which, pursuant to order of the Bankruptcy Court, shall grant Lender a first and prior lien on the Collateral.

> **4.2**      Title Insurance Policy.  LSI shall provide Lender with a mortgagee title insurance policy respecting the Property in form and substance satisfactory to Lender.  Said policy shall be issued by First American Title Insurance Company and shall insure that Lender has a first priority lien encumbering marketable, fee simple title to the Collateral (including any appurtenant easements), and that such lien is free of the possibility of any prior mechanics' or materialmen's liens, and that title to the Property is free and clear of all other exceptions, other than those specifically approved by Lender in writing.   Such policy shall include such endorsements as Lender may require to the extent available under title insurance regulations in effect in the jurisdiction in which the Collateral is located, including without limitation, endorsements over any encroachments, and shall be reinsured in any manner required by Lender.

> **4.3**      Additional Documents. Borrowers shall also execute and deliver such closing certificates, closing statements and other documents that Lender may reasonably request.

3

**5.**     CONDITIONS.  The obligation of Lender to perform under this Loan Agreement, and to make each advance contemplated hereunder, is expressly subject to the performance and existence of the following conditions precedent:

> **5.1**     Loan Documents.  This Loan Agreement, the Note, and the Deed of Trust shall be duly authorized, executed and delivered to Lender, and the Deed of Trust shall have been recorded in the real property records of Douglas County.

> **5.2**     Order Approving Loan.  The Final Order shall have been entered by the Bankruptcy Court, and shall have not been stayed, appealed, reversed, or modified.

> **5.3**     Material Adverse Change.  No material adverse change in the business, condition (financial or otherwise), operations or prospects of the Borrowers shall have occurred, other than as customarily occurs as a result of events leading up to and following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the commencement of the Bankruptcy Case.

> **5.4**     Insurance.  Borrowers will provide Lender throughout the term of the Loan, with copies of all policies of insurance, or at a minimum, certificates of insurance acceptable to Lender, premiums prepaid, with insurance companies satisfactory to Lender, in such amounts and against such risks as shall be required by Lender in its reasonable judgment, with Lender named as an additional insured thereon.

> **5.5**     Absence of Event of Default.  No Event of Default shall have occurred under this Loan Agreement, the Loan Documents, or the Final Order.

**6.**     REPRESENTATIONS AND WARRANTIES.   In addition to all other representations and warranties of Borrowers to Lender, Borrowers represent and warrant as of the date hereof, the closing of the Loan and at all times during the term of the Loan until full repayment thereof, that:

> **6.1**     Existence and Authority.  LSI is and will continue to be a limited partnership duly organized and validly existing under the laws of the State of Colorado.  CTC is and will continue to be a limited liability company duly organized and validly existing under the laws of the State of Colorado.  Borrowers have full and legal right, power and authority to enter into and carry out the provisions of this Loan Agreement and all documents signed by Borrowers pursuant to or in connection with this Loan Agreement, to borrow money, to give security for borrowing as required by this Loan Agreement, and to consummate the transaction contemplated by this Loan Agreement.

> **6.2**     Conflicting Agreements and Restrictions.  Neither the execution and delivery of the Loan Documents nor fulfillment and compliance with the terms and provisions thereof: (i) will result in a breach of the terms, conditions or provisions of, or constitute a default under, or result in any violation of any

4

agreement, instrument, undertaking, judgment, decree, order, writ, injunction, statute, law, rule or regulation to which Borrowers are subject, other than any limitations or restrictions contained in the documents related to the Prepetition Obligations; (ii) will result in the creation or imposition of any lien, charge or encumbrance on, or security interest in, any property now or hereafter included in the Collateral pursuant to the provisions of any mortgage, indenture, security agreement, contract, undertaking or other agreement other than the liens and security interests in favor of Lender created by the Loan Documents; or (iii) except as will be required to be obtained from the Bankruptcy Court, will require any authorization, consent, license, approval or authorization of or other action by, or notice or declaration to, or registration with, any court or administrative or governmental department, commission, board, bureau, authority, agency or body (domestic or foreign), or, to the extent that any such consent or other action may be required, it has been validly procured or duly taken.

**6.3**   Actions and Proceedings.  There is no action or proceeding against, or investigation of Borrowers pending or threatened, which questions the validity of the Loan Documents, or which in any way materially impairs or adversely affects the ability of Borrowers to perform its obligations under the Loan Documents.

**6.4**   Financial Condition. The financial statements of Borrowers, including the Statements of Financial Affairs and Schedules of Assets and Liabilities filed in the Bankruptcy Case, which have been furnished to Lender, are correct and complete and fairly reflect the financial condition of the Borrowers as of the dates thereof, to the best of Borrower' knowledge and belief.  Said financial statements have been prepared in accordance with generally accepted accounting principles consistently applied through the periods involved therein, and there has occurred no material adverse change in the financial condition of Borrowers from the effective dates of said financial statements to the date hereof.   Except as otherwise may be disclosed by Borrowers to Lender prior to the Effective Date hereof, the Borrowers have no contingent obligations, unusual or long-term commitments, unrealized or anticipated losses from any unfavorable commitment or liabilities for taxes not reflected in such financial statements which are individually or in the aggregate substantial in relation to the financial condition of Borrower.

**6.5**   Full Disclosure.   Neither the Loan Documents nor any statement or documents referred to therein, contemplated thereby or delivered to Lender by Borrowers or any other party on its behalf contains or will contain any untrue statement, or omits or will omit to state a material fact necessary to make the statements therein not misleading.

**6.6**   No Violation of Applicable Law.  Borrowers have not violated and are not violating any applicable statute, regulation or ordinance of the United States of America or any foreign country, or of any state, municipality or any other jurisdiction, or of any agency thereof in any respect materially adversely affecting its property, assets, operations or condition, financial or otherwise.

**6.7**     Permits. Borrowers shall maintain in full force and effect all certificates, licenses, permits, authorizations, consents and approvals from governmental authorities relating to the Collateral; and Borrowers shall obtain all certificates, licenses, permits, authorizations, consents and approvals required for the full use, occupancy and operation of the Property from all governmental authorities having jurisdiction there over.  Borrowers shall deliver to Lender copies of such certificates, licenses, permits, authorizations, consents and approvals upon request therefor by Lender.

**6.8**     Ownership of Collateral; Liens.  LSI shall have good and marketable title to the Collateral, and no portion of the Collateral is or will be subject to any mortgage, pledge, security interest, encumbrance, lien or charge of any kind, excluding only encumbrances in favor of Lender.

**6.9**     Survival of Representations.   All representations and warranties made herein or in any other Loan Documents will survive the delivery of the Note, and any investigation at any time made by or on behalf of Lender shall not diminish Lender's right to rely thereon.  All statements contained in any certificate or other instrument delivered by or on behalf of any Borrowers under or pursuant to this Loan Agreement or any other Loan Documents or in connection with the transactions contemplated hereby or thereby shall constitute representations and warranties made hereunder.

**7.**     BORROWERS' AFFIRMATIVE COVENANTS.   Until the payment in full of the Loan or unless Lender shall otherwise consent in writing, Borrowers agree to perform or cause to be performed the following:

**7.1**     Maintenance.   Borrowers will maintain their existence and remain in good standing in the States of Colorado.

**7.2**     Compliance with Laws.   Borrowers will comply with all statutes, laws, rules or regulations to which Borrowers are subject or by which their properties are bound or affected.

**7.3**     Further Assurances.  Borrowers will, from time to time, promptly cure any defects or omissions in the execution and delivery of, or the compliance with the Loan Documents, including the execution and delivery of additional documents reasonably requested by Lender.

**7.4**     Performance of Obligations.  Borrowers will pay the Note according to the reading, tenor and effect thereof and will do and perform every act and discharge all of the obligations provided to be performed and discharged under the Loan Documents at the time or times and in the manner therein specified.

**7.5**     Notification of Liens.  Borrowers will notify Lender of the existence or asserted existence of any mortgage, pledge, lien, charge or encumbrance on any

6

of the Collateral, or any part thereof, forthwith upon any of the Borrowers obtaining knowledge thereof.

**7.6** <u>Financial Statements</u>. Borrowers will maintain adequate and accurate books and records of account in accordance with generally accepted accounting principles, consistently applied. Lender shall have the right (upon reasonable prior notice) to examine and copy such books and records at Lender's sole cost and expense, to discuss the Collateral and all financial matters relating thereto, and to be informed as to the same from time to time as Lender might reasonably request, but in any event annually.

**7.7** <u>Taxes</u>. Borrowers will pay when due all postpetition taxes, assessments, governmental charges or levies (including foreign governmental authorities), and all postpetition claims for labor, materials, supplies, rent and other obligations which, if unpaid, might become a lien against the Collateral.

**7.8** <u>Other Notifications</u>. Borrowers will notify Lender as soon as practicable, but in any event within five (5) days after Borrowers know or have reason to know that any of the following has occurred: (i) an Event of Default, (ii) any material adverse change in the Collateral or any Borrower's business operations, (iii) any change in the accounting practices and procedures of Borrowers, including a change in any Borrower's fiscal year, and (iv) any other event, occurrence or circumstance which indicates the reasonable likelihood of the occurrence of a material adverse change in the financial condition, business or operations of any Borrower.

**7.9** <u>Use of Loan Proceeds</u>. Borrowers shall use Loan proceeds only as may be agreed to by Lender in connection with each advance.

**8.** <u>BORROWERS' NEGATIVE COVENANTS</u>.  Until payment in full of the Loan or unless Lender shall otherwise consent in writing, Borrowers will not perform or permit to be performed any of the following acts:

**8.1** <u>Creation or Existence of Liens</u>.  Borrowers will not create, assume or suffer to exist any mortgage, pledge, lien, charge or encumbrance on the Collateral, or any part thereof.

**8.2** <u>Transfer of Property</u>.  Borrowers shall not sell, transfer or convey all or any part of the Collateral or any interest therein, and Borrowers shall not permit any change in the ownership or membership of any Borrower, without the prior written consent of the Lender.

**8.3** <u>Disbursements</u>.  Borrowers shall not make any disbursements from proceeds of the Loan for purposes that have not been approved by Lender.

**8.4** <u>Continuance of Business Operations</u>.  Borrowers shall continue to operate their respective businesses in the ordinary course, and shall not make a material

modification to such operations, nor cease operating all or any substantial component of any Borrower's business operations, without the prior written consent of Lender, which consent shall not be unreasonably withheld.

**8.5**   Modification of Organizational Documents:   Borrowers shall not participate in, suffer or permit the amendment, modification, restatement, cancellation or termination of any document now or hereafter evidencing or relating to any Borrower, including, without limitation, each Borrower's respective Articles of Organization, Operating Agreement, and/or Partnership Agreement, without the prior written consent of Lender.

**9.**   EVENTS OF DEFAULT.  The Events of Default listed in the Deed of Trust and the Final Order are hereby incorporated in this Loan Agreement by this reference and made a part of this Loan Agreement and shall constitute "Events of Default" hereunder and under each of the other Loan Documents.  These Events of Default include, but are not limited to, the following:

**9.1**   Nonpayment of Note.  Default in payment when due of any interest on or principal of the Note.

**9.2**   Other Nonpayment.  Default in payment when due of any amount (other than principal and interest) payable to Lender under the terms of this Loan Agreement or any amount payable to Lender under the terms of any other agreement between Borrowers and Lender, but excluding any obligations owed to any Lender on account of the Prepetition Obligations.

**9.3**   Breach of Covenants.   Default by Borrowers in the performance or observance of any covenant contained in this Loan Agreement or any of the other Loan Documents or any instrument executed in connection with the Loan or any other instrument delivered to Lender in connection with this Loan Agreement, or the Final Order, including, without limitation, the falsity or breach of any representation, warranty or covenant.

**9.4**   Event of Default Under Other Loan Documents.  Any Event of Default occurs under the Note, the Deed of Trust or any of the other Loan Documents, or the Final Order, or any provision of the Loan Documents shall cease to be valid and binding on the Borrower, or the Borrowers shall so assert in any pleading filed in any court.

**9.5**   Representations and Warranties.  Any representation or warranty made by the Borrowers in this Agreement, or any other Loan Document, or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with the Loan shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; or

**9.6**     Bankruptcy Events. (i) Conversion of any Borrower's Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; (ii) the appointment of a trustee in any Borrower's Bankruptcy Case without the consent of the Lender; (iii) the appointment of an examiner in any Bankruptcy Case with expanded powers without the consent of the Lender; (iv) the dismissal of any Borrower's Bankruptcy Case; (v) any action by Borrowers to seek to amend, modify, or reverse the Final Order without the prior written consent of Lender; or (vi) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending the Final Order without the consent of the Lender.

**9.7**     Bankruptcy Priority. (a) The Borrowers shall (i) bring or consent to any motion or application in the Bankruptcy Case to obtain financing from any person other than the Lender under section 364 of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under the Loan Documents) which financing is to be secured by the Collateral; (ii) grant any lien that is *pari passu* or senior to any lien granted to the Lender under the Final Order, except as permitted therein; or (iii) grant a superpriority claim, other than that granted in the Final Order, which is *pari passu* with or senior to any of the claims of the Lender against the Borrowers hereunder; or (b) any other party shall seek and obtain allowance of any order in the Bankruptcy Case to recover from any portion of the Collateral any costs or expenses of preserving or disposing of such Collateral under section 506(c) of the Bankruptcy Code; or

**10.**     REMEDIES. Upon the occurrence of an Event of Default, the Lender may, on behalf of the Lender, at its option:

**10.1**     Cessation of Funding. Cease all funding under this Loan Agreement.

**10.2**     Acceleration of Note; Exercise of Remedies. Declare the Note to be immediately due and payable whereupon the Note shall become forthwith due and payable without presentment, demand, protest or further notice of any kind, and Lender shall be entitled to proceed simultaneously or selectively and successively to enforce its rights under the Note, this Loan Agreement and any of the other Loan Documents, or any one or all of them, subject to any limitations thereon set forth in the Final Order. Nothing contained herein shall limit Lender's rights and remedies available under applicable laws, except to the extent such rights and remedies are limited by the Final Order.

**10.3**     Selective Enforcement. In the event Lender shall elect to selectively and successively enforce its rights under any of the Loan Documents, such action shall not be deemed a waiver or discharge of any other lien, encumbrance or security instrument securing payment of the Note until such time as Lender shall have been paid in full all sums advanced under the Note. The foreclosure of any lien provided pursuant to this Loan Agreement without the simultaneous foreclosure of all such liens shall not merge the liens granted which are not

foreclosed with any interest which Lender might obtain as a result of such selective and successive foreclosure.

11.    GENERAL PROVISIONS.  Lender and Borrowers agree as follows:

11.1    Expenses.  Borrowers agrees to pay all fees, expenses and charges in respect to the Loan contemplated by this Loan Agreement, including, without limiting the generality thereof, the following:

11.1.1 reasonable fees and expenses of counsel employed by Lender in connection with the documentation and closing of the Loan, and upon an Event of Default, all reasonable fees and expenses of counsel employed by Lender in connection with exercising any rights or remedies hereunder, or under any other Loan Document;

11.1.2 recording and filing fees;

11.1.3 other reasonable fees and expenses involved in the closing of this Loan and the reasonable fees and expenses payable by Lender which are incidental to the successful enforcement or successful defense of this Loan Agreement or any of the other Loan Documents.

11.2    Notices.  Any notices or other communications required or permitted hereunder shall be sufficiently given if delivered personally, or sent by overnight delivery, postage prepaid, and addressed as listed below or to such other address as the party concerned may substitute by written notice to the other.  All notices shall be deemed received within three (3) days (excluding Saturdays, Sundays and holidays recognized by national banking associations) after being mailed:

To LSI:                              Land Securities Investors Ltd.
                                     Attn:  Alan R. Fishman
                                     8361 N. Rampart Range Rd.
                                     Littleton, CO  80125

        With a copy to:              Lee M. Kutner
                                     Kutner Miller Brinen, P.C.
                                     303 East 17th Avenue, Suite 500
                                     Denver, CO  80203

To Retail II:                        LSI Retail II, LLC.
                                     Attn:  Alan Fishman
                                     8361 N. Rampart Range Road, Suite 208
                                     Littleton, CO  80125

        With a copy to:              Jeffrey Weinman
                                     730 17th Street, Suite 240
                                     Denver, CO  80202

|  |  |
|---|---|
| To CTC: | Conifer Town Center, LLC.<br>Attn:  Alan Fishman<br>8361 N. Rampart Range Road, Suite 208<br>Littleton, CO  80125 |
| With a copy to: | Jeffrey Weinman<br>730 17th Street, Suite 240<br>Denver, CO  80202 |
| To Lender: | TIC Lending, LLC<br>5460 S. Quebec Street, #300<br>Greenwood Village, CO  80111 |
| with a copy to: | Caroline C. Fuller<br>Fairfield and Woods, P.C.<br>1700 Lincoln Street, Suite 2400<br>Denver, CO  80203 |

**11.3**   <u>Amendments and Waivers.</u>   No term, covenant, agreement or condition of this Agreement or any of the Loan Documents may be amended or waived, nor any departure therefrom be consented to, without the prior written consent of Lender.

**11.4**   <u>Non-Waiver; Cumulative Remedies</u>.   No failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof.   The remedies herein provided are cumulative and not alternative.

**11.5**   <u>Assignment</u>.   Neither this Loan Agreement, nor the loan proceeds hereunder, shall be assignable by Borrowers without the prior written consent of Lender.  No obligation under this Loan Agreement, nor the rights under any Note, may be assigned by any Lender, nor may any Lender sell, design, delegate or create a participating interest in its obligations hereunder, without the prior written consent of the Lender and Required Lender.

**11.6**   <u>No Agency</u>.   Lender is not the agent or representative of any Borrower, and Borrowers are not the agent or representative of Lender, and nothing in this Agreement shall be construed to make Lender liable to anyone for any labor or services performed or rendered on, or materials supplied or furnished to, the Collateral or for any debts or claims accruing against Borrowers.  Nothing in this Agreement shall be construed to create any privity of contract or other relationship between Lender and anyone performing or rendering labor or services on, or supplying or furnishing materials, to the Collateral.

**11.7**   No Partnership or Joint Venture.  Neither any provision of this Agreement nor any acts of the parties to this Agreement shall be construed to create a partnership or a joint venture between Borrowers and Lender.

**11.8**   Counterparts.   This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and shall be binding upon all parties, their successors and assigns, and all of which taken together shall constitute one and the same agreement.

**11.9**   Descriptive Headings.  The descriptive headings of the paragraphs of this Loan Agreement are for convenience only and shall not be used in the construction of the terms hereof.

**11.10**   Integrated Agreement.  This Loan Agreement and the Loan Documents executed in connection herewith constitute the entire agreement between Lender and Borrowers, and there are no agreements, understandings, warranties or representations between the parties regarding the Loan other than those set forth herein or in the Loan Documents.

**11.11**   Time of Essence.  Time is of the essence of this Loan Agreement.

**11.12**   Binding Effect.  This Loan Agreement shall be binding upon and inure to the benefit of Lender and Borrowers and their respective successors, legal representatives and assigns.

**11.13**   Third-Party Beneficiary.   Nothing in this Loan Agreement, express or implied, is intended to confer upon any person, other than Lender and Borrowers and their respective successors and assigns, any rights or remedies under or by reason of this Loan Agreement.

**11.14**   Applicable Law. THIS LOAN AGREEMENT AND THE DOCUMENTS ISSUED AND EXECUTED HEREUNDER SHALL BE DEEMED TO BE A CONTRACT MADE UNDER THE LAWS OF THE STATE OF COLORADO AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF COLORADO.   NOTHING IN THIS LOAN AGREEMENT SHALL BE CONSTRUED TO CONSTITUTE LENDER AS JOINT VENTURER WITH BORROWERS, OR TO CONSTITUTE A PARTNERSHIP BETWEEN THE PARTIES.

**11.15**   Waiver of Jury Trial.   THE BORROWERS AND LENDER JOINTLY AND SEVERALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THE LOAN DOCUMENTS.   THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE BORROWERS, AND THE BORROWERS ACKNOWLEDGE THAT NEITHER LENDER NOR ANY PERSON ACTING ON BEHALF OF THE

LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE LENDER, AND THE LENDER ACKNOWLEDGES THAT NO BORROWER NOR ANY PERSON ACTING ON BEHALF OF ANY BORROWER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. EACH PARTY FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THE LOAN DOCUMENTS AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL. EACH PARTY ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION. THIS ASSIGNMENT CONSTITUTES A WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY AND EITHER PARTY IS AUTHORIZED AND EMPOWERED TO FILE THIS ASSIGNMENT WITH THE CLERK OR JUDGE OF ANY COURT OF COMPETENT JURISDICTION AS A STATUTORY WRITTEN CONSENT TO WAIVER OF TRIAL BY JURY.

IN WITNESS WHEREOF, Lender and Borrowers have caused this Loan Agreement to be duly executed effective as of the day and year first above written.

"LENDER":                     **TIC LENDING, LLC**
A Colorado limited liability company

By:_____
            Richard Wigley, Manager


"BORROWER":           **LAND SECURITIES INVESTORS LTD.**

            By: Sunset Management Services, Inc., General Partner


By: _____
Alan R. Fishman, President


**LSI RETAIL II, LLC**

            By: Sunset Management Services, Inc., Manager


By: _____
Alan R. Fishman, President


**CONIFER TOWN CENTER, LLC**


By: _____
Alan R. Fishman, Manager


By: _____
David Coppfer, Manager

# TERM NOTE

$250,000.00                                                              _____, 2013

**FOR VALUE RECEIVED**, the undersigned, **LAND SECURITIES INVESTORS LTD.**, a Colorado limited partnership ("LSI"), **LSI RETAIL II, LLC**, a Colorado limited liability company ("Retail II"), and **CONIFER TOWN CENTER, LLC**, a Colorado limited liability company ("CTC") (jointly, "Borrowers") HEREBY PROMISE TO PAY to the order of TIC Lending, LLC, a Colorado limited liability company (hereinafter, the "Lender"), at 5460 S. Quebec Street, #300, Greenwood Village, CO 80111, or at such other place as the Lender may designate from time to time in writing, in lawful money of the Two Hundred Fifty Thousand Dollars (**$250,000.00**).  **All capitalized terms not defined herein shall have the definition ascribed to them in that certain Loan Agreement of even date herewith between Borrowers and Lender, which definitions are hereby incorporated by reference.**

1.      Payment:  All amounts owing pursuant to this Note, and all Obligations arising under the Loan Documents, shall be payable to Lender on the earliest of (a) the closing of the sale of the Collateral; (b) the effective date of any Plan of Reorganization confirmed in the Bankruptcy Case of any Borrower; or (c) December 31, 2013 ("Maturity Date").

2.      Interest:  Interest at the rate of ten percent (10 %) per annum shall accrue on all unpaid principal.  All principal and accrued interest shall be payable on the Maturity Date.  If payment under this Note is not made when due, interest shall accrue on the entire balance of principal, interest, and other sums due hereunder at a default rate of eighteen percent (18%) per annum (the "Default Rate").

3.      Prepayments:  Borrowers shall have the right to prepay this Note in whole or in part at any time and from time to time without any penalty or premium.  Any prepayment, whether in whole or in part, shall be applied first to accrued interest and the balance to principal.

4.      Several Obligation of Retail II and CTC.  LSI shall be responsible for repayment of all Obligations arising under the Loan Documents.  Retail II and CTC shall be severally, but not jointly, liable for all Obligations arising under the Loan Documents on account of advances made to each, but neither shall be liable for any advances made solely for the benefit of any other Borrower.

5.      Default:  Lender may declare this Note in default, and all principal and accrued interest under this Note shall become due and payable in full at the option of Lender without further notice or demand, in any of the following circumstances (each an "Event of Default"):

(a)      any indebtedness, including, but not limited to the principal, the interest or any other obligation arising hereunder, is not paid when due;

(b)      Borrowers fail to observe any covenant contained in this Note;

**EXHIBIT B**

      (c)      the occurrence of an Event of Default under the Loan Agreement, the Deed of Trust, or any other loan documents executed in connection herewith; or

      (d)      the occurrence of an Event of Default under the Final Order.

      6.    <u>Waiver</u>:  Borrowers hereby waive demand, presentment, protest, notice of dishonor, notice of intention to accelerate, notice of acceleration, notice of protest and any and all lack of diligence or delay in collection or the filing of suit hereon which may occur, and agrees to all extensions before or after maturity, without prejudice to the Lender hereof. Lender may exercise any and all of its rights and remedies under this Note and the Deed of Trust, as well as any additional rights and remedies it may have at law or at equity, to recover full payment of the balance, including principal, interest, fees and other costs and expenses, owing under this Note, and Lender shall be entitled to recover from Borrowers all costs of collection, including but not limited to its reasonable attorneys' fees. The failure of Lender to exercise any of its rights or remedies hereunder or at law shall not constitute a waiver, nor shall it bar the exercise any right or option at any future time, unless so stated by the Lender in writing.

      7.    <u>Maximum Interest</u>:  In no event shall the amount of interest due or payable under this Note exceed the maximum rate of interest allowed by applicable law and, in the event any such payment is inadvertently paid by Borrowers or inadvertently received by Lender, then such excess sum shall be credited as a payment of principal, unless Borrowers shall notify Lender in writing that Borrowers elects to have such excess sum returned to it forthwith. It is the express intent of the parties hereto that Borrowers not pay and Lender not receive, directly or indirectly, in any manner whatsoever, interest in excess of that which may be lawfully paid by Borrowers under applicable law.

      8.    <u>Deed of Trust</u>:  The payment of this Note is secured by the Deed of Trust issued by Land Securities Investors Ltd. in favor of Lender of even date herewith.

      9.    <u>Headings</u>:  Any captions and headings in this Note are inserted for convenience of reference only and shall not be deemed to constitute a part hereof nor be interpreted in construing this Note.

      10.    <u>Severability</u>:  If any provision of this Note shall be invalid or unenforceable, the remaining provisions shall remain in full force and effect.

      11.    <u>Governing Law</u>:  This Note shall be governed by, construed and enforced in accordance with the laws of the State of Colorado.

      12.    <u>Counterparts</u>.  This Note may be executed in several counterparts, each of which shall be deemed an original, and all of which shall together constitute one and the same instrument.

**************

2

IN WITNESS WHEREOF, the undersigned has caused this Term Note to be executed by its duly authorized officer as of the date above first written.  This Term Note is intended to take effect as a sealed instrument.

[signatures on following page]

BORROWER:

**LAND SECURITIES INVESTORS LTD.**

By:   Sunset Management Services, Inc., General Partner

By: _____
Alan R. Fishman, President

**LSI RETAIL II, LLC**

By:   Sunset Management Services, Inc., Manager

By: _____
Alan R. Fishman, President

**CONIFER TOWN CENTER, LLC**

By: _____
Alan R. Fishman, Manager

By: _____
David Coppfer, Manager

[Signature Page to Term Note]

4

<u>DEED OF TRUST AND SECURITY AGREEMENT</u>

This DEED OF TRUST AND SECURITY AGREEMENT (the "Deed of Trust") is made and executed as of _____, 2013, by LAND SECURITIES INVESTORS LTD., a Colorado limited partnership ("Borrower"), whose address is 8361 N. Rampart Range Rd., Littleton, CO  80125, to the Public Trustee of the County of Jefferson, State of Colorado (the "Trustee"), for the benefit of TIC Lending, LLC, a Colorado limited liability company, its successors and assigns ("Lender"), having its principal office at 5460 S. Quebec Street, #300, Greenwood Village, CO  80111, or at such other place as Lender may from time to time designate.

<u>W I T N E S S E T H :</u>

WHEREAS, Borrower is indebted to Lender in the original principal sum of $250,000.00 with interest thereon (the "Loan"), which Loan is evidenced and represented by that certain Note of even date herewith (the "Note"), both principal and interest being payable as therein provided, with the first payment on the Note becoming due and payable on the date of disbursement, and all amounts remaining unpaid thereon being finally due and payable on December 31, 2013, and the term "Note" shall include all other notes given in substitution, modification, increase, renewal or extension of the original Note described herein, in whole or in part; and

WHEREAS, Lender, as a condition precedent to the extension of credit and the making of the Loan has required that Borrower provide Lender with security for the repayment of the Loan as well as for the performance, observance and discharge by Borrower of various terms, covenants, conditions and agreements made by Borrower to, with, in favor of and for the benefit of Lender with respect to the Loan and such security;

NOW THEREFORE, in consideration of and in order to secure the repayment of the Loan evidenced and represented by the Note, together with interest on the Loan, as well as the payment of all other sums of money secured hereby, including, but not limited to, all Obligations arising under the Loan Agreement between Borrower and Lender, as hereinafter provided; to secure the observance, performance and discharge by Borrower of all terms, covenants, conditions and agreements set forth in the Note, this Deed of Trust and in the other Loan Documents (as hereinafter defined); in order to charge the properties, interests and rights hereinafter described with such payment, observance, performance and discharge; and in consideration of the sum of one dollar paid by Lender to Borrower, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged by Borrower, Borrower does hereby grant, bargain, sell, convey, assign, transfer, pledge, deliver, hypothecate, warrant and confirm unto the Trustee, in trust, with power of sale and right of entry and possession, the following described properties, including all rights, interests, replacements, substitutions and additions thereto, therein or therefor (collectively, the "Property"):

(i)      All that certain piece, parcel or tract of land or real property of which Borrower is now seized and in actual or constructive possession, situated in the City of Lakewood, County of Jefferson, and State of Colorado (the "State"), and being more particularly described on **<u>Exhibit A</u>** attached hereto and by this reference made a part hereof (the "Real Property");

**Exhibit C**

      (ii)     All buildings, structures and other improvements of any kind, nature or description now or hereafter erected, constructed, placed or located upon the Real Property (the "Improvements"), including, without limitation, any and all additions to, substitutions for or replacements of such Improvements;

      (iii)    All minerals, royalties, gas rights, water, water rights, water stock, flowers, shrubs, lawn plants, crops, trees, timber and other emblements now or hereafter located on, under or above all or any part of the Real Property;

      (iv)    All of Grantor's right, title and interest, if any, in water rights and conditional water rights that are appurtenant to or that have been used or are intended for use in connection with the Property, including but not limited to (i) ditch, well, pipeline, spring and reservoir rights, whether or not adjudicated or evidenced by any well or other permit, (ii) all rights with respect to nontributary groundwater (and other groundwater that is subject to the provisions of Colorado Revised Statutes Section 37-90-137(4) or the corresponding provisions of any successor statute) underlying said land, (iii) any permit to construct any water well, water from which is intended to be used in connection with the Property, and (iv) all of Grantor's right, title and interest under any decreed or pending plan of augmentation or water exchange plan.

      (v)     All and singular, the tenements, hereditaments, strips and gores, rights-of-way, easements, privileges, profits and other appurtenances now or hereafter belonging or in any way appertaining to the Property, including, without limitation, all right, title and interest of Borrower in any after-acquired right, title, interest, remainder or reversion in and to the beds of any ways, streets, avenues, roads, alleys, passages and public places, open or proposed, in front of, running through, adjoining or adjacent to the Real Property (the "Appurtenances");

      (vi)    Any and all leases, licenses, contracts, rents, license fees, royalties, issues, revenues, profits, proceeds, deposits, income and other benefits, including accounts receivable, termination fees, of, accruing to or derived from the Real Property, Improvements and Appurtenances, and any business or enterprise presently situated or hereafter operated thereon and therewith and all of Borrower's interest under any and all lease guaranties, letters of credit, and any other credit support furnished to Borrower in connection with any of the foregoing (the "Rents"); and

      (vii)    Any and all awards, payments or settlements, including interest thereon, and the right to receive the same, as a result of: (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any way, street, avenue, road, alley, passage or public place; (c) any other injury, damage, casualty or claim relating to the taking of, or decrease in the value of, the Real Property, Improvements or Appurtenances; or (d) proceeds of insurance awards, to the extent of all amounts which may be secured by this Deed of Trust at the date of any such award or payment including, but not limited to, Reasonable Attorneys' Fees (as hereinafter defined), costs and disbursements incurred by Lender in connection with the collection of such award or payment.

      TO HAVE AND TO HOLD the foregoing Property and the rights hereby granted for its use and benefit unto the Trustee and its successors and assigns in fee simple forever.

2

Borrower hereby covenants and warrants with and to Lender that Borrower is indefeasibly seized of the Property and has good right, full power and lawful authority to convey and encumber all of the same as aforesaid; that Borrower hereby fully warrants the title to the Property and will defend the same and the validity and priority of the lien and encumbrance of this Deed of Trust against the lawful claims of all persons whomsoever; and Borrower further warrants that the Property is free and clear of all liens and encumbrances of any kind, nature or description, save and except only (with respect to said Real Property, Improvements and Appurtenances) identified on **Exhibit B** attached hereto (the "Permitted Exceptions").

If Borrower shall pay to Lender the Loan and if Borrower shall duly, promptly and fully perform, discharge, execute, effect, complete and comply with and abide by each and every one of the terms, covenants, conditions and agreements of the Note, this Deed of Trust and all other Loan Documents, then this Deed of Trust and the estates and interests hereby granted and created shall cease, terminate and be null and void, and shall be discharged of record at the expense of Borrower.

Borrower, for the benefit of Lender and its successors and assigns, does hereby expressly covenant and agree as follows:

1.      PAYMENT OF PRINCIPAL AND INTEREST. Borrower shall pay the principal of the Loan, together with all interest thereon, in accordance with the terms, covenants and conditions of the Note, promptly at the times, at the place and in the manner that said principal and interest shall become due, and shall promptly and punctually pay all other sums required to be paid by Borrower pursuant to the terms, covenants and conditions of the Note, this Deed of Trust, and all other documents and instruments executed as further evidence of, as additional security for or executed in connection with the Loan (collectively, the "Loan Documents"), including, any and all additional advances made by Lender to protect or preserve the Property or the lien or security interest created hereby on the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Borrower's obligations hereunder or under the other Loan Documents or for any other purpose provided herein or in the other Loan Documents.

2.      PERFORMANCE OF OTHER OBLIGATIONS. Borrower shall perform, comply with and abide by each and every one of the terms, covenants, conditions and agreements contained and set forth in the Note, this Deed of Trust and the other Loan Documents; shall comply with all Laws (as hereinafter defined); shall perform all of its obligations under any term, covenant, condition, restriction or agreement of record affecting the Property; and shall ensure that at all times the Property constitutes one or more legal lots capable of being conveyed without violation of any subdivision or platting laws, codes, ordinances, statutes, rules, regulations, or other laws relating to the division, separation or subdivision of real property.

3.      PRESERVATION AND MAINTENANCE OF PROPERTY; ACCESSIBILITY; HAZARDOUS SUBSTANCES.

(a)      Borrower shall keep all Improvements now existing or hereafter erected on the Real Property in good order and repair, and shall not do or permit any waste, impairment or deterioration thereof or thereon; shall not alter, remove or demolish any of the Improvements or any fixtures and personal property attached or appertaining thereto, without the prior written consent of Lender; shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Property or any part thereof; and shall not do or permit any other act whereby the Property shall become less valuable, be used for purposes contrary to applicable Law or be used in any manner which will

3

increase the premium for or result in a termination or cancellation of the insurance policies hereinafter required to be kept and maintained on the Property.

(b)     Borrower at all times shall keep the Property and ground water of the Property free of Hazardous Substances (as hereinafter defined) and any liens arising in connection therewith. Borrower shall not and shall not knowingly permit its tenants or any third party requiring the consent of Borrower to enter the Property, to use, generate, manufacture, treat, store, release, threaten release, transport on or over, emit or dispose of Hazardous Substances in, on, over, under or about the Property, including the ground water of the Property, in violation of any federal, regional, state or local law, code, ordinance, statute, rule, regulation, decision or order currently in existence or hereafter enacted or rendered, including, but not limited to, those enumerated in the Indemnity Agreement of even date herewith executed by Borrower ("Hazardous Substances Laws"). Borrower shall give Lender prompt Written Notice (as hereinafter defined) of any claim by any person, entity or governmental agency that a significant release or disposal of Hazardous Substances has occurred in, on, over, under or about the Property, including the ground water of the Property, in excess of those permitted by the Hazardous Substances Laws, whether caused by Borrower, any tenant or any third party. Borrower, through its professional engineers and at Borrower's sole cost, shall promptly and thoroughly investigate any suspected release of Hazardous Substances in, on, over, under or about the Property, including the ground water of the Property. Borrower shall forthwith remove, repair, remediate, clean up and/or detoxify any Hazardous Substances found in, on, over, under or about the Property, or in the ground water of the Property, to the extent such actions are required by any applicable Hazardous Substances Laws, and whether or not Borrower was responsible for the existence of the Hazardous Substances in, on, over, under or about the Property or the ground water of the Property. Hazardous Substances shall include, but not be limited to, substances defined as "hazardous substances," "hazardous materials," or "toxic substances" under any Hazardous Substances Laws. In addition, Borrower shall not incorporate any underground storage tanks into the Real Property without the prior written consent of Lender, and shall ensure that all tanks currently on the Real Property comply with current Hazardous Substances Laws and underground storage tank regulations and are properly registered. In the event that the Property is repaired, renovated or demolished in any manner that has the potential to result in the generation, disturbance or disposal of any Hazardous Substances, all such work shall be performed in compliance with Law by contractors adequately insured and properly licensed in the State. A final report demonstrating satisfactory completion of such work and the legal disposal of any Hazardous Substances shall be provided to Lender by the contractor.

Borrower hereby agrees to indemnify and defend Lender and hold Lender harmless from and against any and all losses, liabilities, damages, injuries, costs, expenses, fines, fees, suits, actions, debts, obligations, and claims of any and every kind whatsoever, including Reasonable Attorneys' Fees (collectively, "Losses") paid, incurred or suffered by, or asserted against, Lender for, with respect to, or as a direct or indirect result of the presence in, on, over, under or about, or the escape, seepage, leakage, spillage, discharge, emission or release from the Property of any Hazardous Substances (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses or claims asserted or arising under any Hazardous Substances Laws), regardless of the source of origination and whether or not caused by, or within the control of, Borrower **AND INCLUDING ANY CLAIMS OF LENDER'S NEGLIGENCE OR STRICT LIABILITY**, but excluding Lender's willful misconduct or gross negligence. Liability under this Section 3(b) and similar provisions in this Deed of Trust and the other Loan Documents concerning Hazardous Substances shall survive repayment of the Note and satisfaction of this Deed of Trust unless at such time Borrower provides Lender with an environmental report prepared by an environmental engineer approved by Lender demonstrating that the Property is free of Hazardous Substances and is not or is no longer in violation of any Hazardous Substances Laws. Borrower shall not be liable under this

4

indemnity if the Property becomes contaminated by Hazardous Substances subsequent to Lender's acquisition of the Property by foreclosure or acceptance by Lender of a deed in lieu of foreclosure, or subsequent to any transfer of ownership of the Property that was approved or authorized by Lender in writing; provided that such transferee assumes in writing all of the obligations of Borrower with respect to compliance with Hazardous Substances Laws under this Deed of Trust and under the other Loan Documents. The burden of proof under this Section 3(b) with regard to establishing the date upon which Hazardous Substances were placed, appeared or released in, on, over, under or about the Property shall be upon Borrower.

(c)     Lender and/or its agents shall have the right and shall be permitted, but shall not be required, at all reasonable times, to enter upon and inspect the Property to insure compliance with the foregoing covenants, and any and all other terms, covenants, conditions and agreements set forth in this Deed of Trust.

4.     PAYMENT OF TAXES, ASSESSMENTS AND OTHER CHARGES. Borrower shall pay all taxes, assessments and other charges as already levied or assessed, or that may be hereafter levied or assessed, upon or against the Property, when the same shall become due and payable according to Law, before delinquency and before any interest or penalty shall attach thereto, and to deliver official receipts evidencing the payment of the same to Lender not later than thirty (30) days following the payment of the same; *provided, however,* that Borrower may pay any taxes, assessments, or other charges incurred prior to Borrower's bankruptcy filing on January 29, 2013 in accordance with the terms of any plan of reorganization confirmed in Borrower's bankruptcy case. Borrower shall have the right to contest, in good faith and in accordance with applicable Laws and procedures, the proposed assessment of ad valorem taxes or special assessments by governmental authorities having jurisdiction over the Property; provided, however, Borrower shall give Written Notice of its intent to bring such an action to Lender. Any such contest, however, shall not relieve Borrower of its obligation to pay all taxes, assessments and public charges in full as required by the first sentence of this Section 4, and Lender may, in its sole discretion, require Borrower to post a bond or other collateral satisfactory to Lender (and acceptable to the title company insuring this Deed of Trust to insure over said lien, charge or encumbrance) as a result of Borrower's act.

5.     PAYMENT OF LIENS, CHARGES AND ENCUMBRANCES. Borrower shall immediately pay and discharge from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, realtors, brokers and others which if unpaid, might result in, or permit the creation of, a lien, charge or encumbrance upon the Property or any part thereof, or on the Rents, arising therefrom and, in general, to do or cause to be done everything necessary so that the lien of this Deed of Trust shall be fully preserved, at the sole cost of Borrower, without expense to Lender. Borrower shall have the right to contest, in good faith and in accordance with applicable Laws and procedures, mechanics', materialmen's and other such liens filed against the Property; provided, however, that Borrower shall give Written Notice to Lender of its intent to bring such action and Lender may, in Lender's sole discretion, require Borrower to post a bond or other collateral satisfactory to Lender (and acceptable to the title company insuring this Deed of Trust) as a result of Borrower's act.

6.     PAYMENT OF JUNIOR ENCUMBRANCES. Borrower shall permit no default or delinquency under any other lien, imposition, charge or encumbrance against the Property, even though junior and inferior to the lien of this Deed of Trust; provided, however, the foregoing shall not be construed to permit any such additional lien or encumbrance against the Property, other than the Permitted Exceptions.

7.     LIABILITY INSURANCE. Borrower shall carry and maintain such commercial general liability insurance in an adequate amount as may from time to time be required by Lender, taking into consideration the type of property being insured and the corresponding liability exposure, on forms, with deductibles, in amounts and with such company or companies licensed to do business in the State and as may be acceptable to Lender. All such commercial general liability insurance shall be underwritten with a company or companies which have and maintain a rating equivalent to at least A:X as shown in the most recent Best's Key Rating Guide. The original policy or policies and all renewals thereof are hereby assigned to Lender as additional security for the Loan. Borrower shall provide Lender an ACORD Form 25 certificate of insurance. Such policy or policies of insurance shall name Lender as an additional insured and shall provide for not less than thirty (30) days prior Written Notice to Lender of any intent to modify, cancel, non-renew or terminate the policy or policies or the expiration of such policy or policies of insurance, or the exclusion of any individual risk such as acts of terrorism. Not less than fifteen (15) days prior to the expiration dates of each policy or policies required of Borrower hereunder, Borrower will deliver to Lender a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment and renewal satisfactory to Lender. In the event of foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment of the Loan, all right, title and interest of Borrower, in and to any insurance policies then in force, including any rights to unearned premiums, and in and to insurance proceeds then payable, shall pass to the purchaser or grantee. In case of Borrower's failure to keep the Property properly insured as required herein, Lender, its successors or assigns, may, at its option (but shall not be required to), acquire such insurance as required herein at Borrower's sole expense.

8.     COMPLIANCE WITH LAWS.  Borrower shall observe, abide by and comply with all federal, regional, state and local laws, codes, ordinances, statutes, rules, regulations, decisions, orders, requirements or decrees relating to the Property enacted, promulgated or issued by any federal, state, county or local governmental or quasi-governmental authority or any agency or subdivision thereof having jurisdiction over Borrower or the Property, which now or hereafter affect Borrower or the Property, including Hazardous Substances Laws (collectively, the "Laws"), and to observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning, variances, special exceptions and nonconforming uses), privileges, franchises and concessions which are applicable to the Property, or which have been granted to or contracted for by Borrower in connection with any existing, presently contemplated or future uses of the Property.

9.     EXECUTION OF ADDITIONAL DOCUMENTS. Borrower shall do, make, execute, acknowledge, witness and deliver all deeds, conveyances, mortgages, deeds of trust, assignments, estoppel certificates, subordination non-disturbance and attornments, notices of assignments, transfers, assurances, security agreements, financing statements and renewals thereof, and all other instruments or other acts necessary, as Lender shall from time to time require for the purpose of better assuring, conveying, assigning, transferring, securing and confirming unto Lender the Property and rights hereby encumbered, created, conveyed, assigned or intended now or hereafter so to be encumbered, created, conveyed or assigned, or which Borrower may now be or may hereafter become bound to encumber, create, convey or assign to Lender, or for the purpose of carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering or recording this Deed of Trust, and to pay all filing, registration or recording fees and all taxes, costs and other expenses, including Reasonable Attorneys' Fees, incident to the preparation, execution, acknowledgment, delivery and recordation of any of the same. Without limiting any other provision herein, Borrower hereby authorizes Lender to file one or more financing statements and any renewal or continuation statements thereof, describing the Property and the

6

proceeds of the Property, including, without limitation, a financing statement covering "all assets of Borrower all proceeds therefrom, and all rights and privileges with respect thereto."

      10.    <u>AFTER-ACQUIRED PROPERTY SECURED.</u> Borrower shall subject to the lien of this Deed of Trust all right, title and interest of Borrower in and to all extensions, improvements, betterments, renewals, substitutions and replacements of, and all additions and appurtenances to, the Property hereinabove described, hereafter acquired by or released to Borrower, or constructed, assembled or placed by Borrower on the Real Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, deed of trust, encumbrance, conveyance, assignment or other act by Borrower, as fully, completely and with the same effect as though now owned by Borrower and specifically described herein, but at any and all times, Borrower will execute and deliver to Lender any and all such further assurances, mortgages, deeds of trust, conveyances, security agreements, financing statements or assignments thereof or security interests therein as Lender may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust.

      11.    <u>PAYMENTS BY LENDER ON BEHALF OF BORROWER.</u> Except as otherwise provided in Section 4 hereof, Borrower shall make payment of any taxes, assessments or public charges on or with respect to the Property before the same shall become delinquent and shall make payment of any insurance premiums or other charges, impositions, or liens herein or elsewhere required to be paid by Borrower as they become due and, if Borrower shall fail so to do or if Lender reasonably believes that Borrower is not going to make such payment, then Lender, at its sole option, but without obligation to do so, may make payment or payments of the same and also may redeem the Property from tax sale without any obligation to inquire into the validity of such taxes, assessments, tax sales, charges, impositions or liens. In the case of any such payment by Lender, Borrower agrees to reimburse Lender, upon demand therefor, the amount of such payment and of any fees and expenses attendant in making the same, together with interest thereon as provided for in the Note; and until paid such amounts and interest shall be added to and become part of the Loan to the same extent that this Deed of Trust secures the repayment of the Loan. Borrower's failure to reimburse Lender within fifteen days of receiving Lender's demand shall be a Monetary Default (as hereinafter defined) and subject to the terms of Section 16 hereof. In making payments authorized by the provisions of this Section 11, Lender may do so whenever, in Lender's sole judgment and discretion, such advance or advances are necessary or desirable to protect the full security intended to be afforded by this Deed of Trust. Neither the right nor the exercise of the rights herein granted to Lender to make any such payments as aforesaid shall preclude Lender from exercising its option to cause the Loan to become immediately due and payable by reason of Borrower's default in making such payments as hereinabove required.

      12.    <u>CONDEMNATION; EMINENT DOMAIN.</u> All claims and rights of action for, and all awards and other compensation heretofore or hereafter made to Borrower and all subsequent owners of the Property in any taking by eminent domain, recovery for inverse condemnation or by deed in lieu thereof, whether permanent or temporary, of all or any part of the Property or any easement or any appurtenance thereto, including severance and consequential damages and change in grade of any way, street, avenue, road, alley, passage or public place, are hereby assigned to Lender. Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, and authorizes, directs and empowers Lender, at the option of Lender as said attorney-in-fact, on behalf of Borrower, its successors and assigns, to adjust or compromise the claim for any such award, and alone to collect and receive the proceeds thereof, to give proper

7

receipts and acquittances therefor and, after deducting any expenses of collection, at Lender's sole discretion and option either:

(a)     in the event there is a material adverse change in the value of the Property as a result of such condemnation or taking by eminent domain, as determined by Lender, in Lender's sole discretion, to apply the net proceeds as a credit upon any portion of the Loan, as selected by Lender, notwithstanding the fact that the amount owing thereon may not then be due and payable, or that the Loan is otherwise adequately secured. In the event Lender applies such awards to the reduction of the outstanding Loan, such proceeds shall be applied at par, without any Prepayment Premium, and the monthly installments due and payable under the Note shall be reduced accordingly as calculated by Lender; however, no such application shall serve to cure an existing default of Borrower; or

(b)     in the event there is no material adverse change in the value of the Property as a result of such condemnation or taking by eminent domain, as determined by Lender, in Lender's sole discretion, to hold said proceeds without any allowance of interest, and make the same available for restoration or rebuilding of the Improvements. If the proceeds are made available by Lender to reimburse Borrower for the cost of said restoration or rebuilding, any surplus which may remain out of said award after payment of such cost of restoration or rebuilding shall be applied on account of the Loan at par, without any Prepayment Premium, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Loan may otherwise be adequately secured.

Borrower further covenants and agrees to give Lender immediate notice of the actual or threatened commencement of any proceedings under eminent domain and to deliver to Lender copies of any and all papers served in connection with any such proceedings. Borrower further covenants and agrees to make, execute and deliver to Lender, at any time or times, upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and/or other instruments deemed necessary by Lender for the purpose of validly and sufficiently assigning all such awards and other compensation heretofore or hereafter made to Lender (including the assignment of any award from the United States government at any time after the allowance of the claim therefor, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

It shall be a default hereunder if either: (i) any part of any of the Improvements situated on the Real Property shall be condemned by any governmental authority having jurisdiction; or (ii) a portion of the Real Property shall be condemned such that the remaining Property is in violation of applicable parking, zoning, platting, or other Laws, or fails to comply with the terms of the Occupancy Leases with Major Tenants, then in each case, Lender shall be entitled to exercise any or all remedies provided or referenced in this Deed of Trust or the other Loan Documents, including the application of condemnation proceeds to the outstanding principal balance of the Note at par, without any Prepayment Premium, and the right to accelerate the maturity date of the Note and require payment in full without the imposition of a Prepayment Premium.

13.     COSTS OF COLLECTION. In the event that the Note is placed in the hands of an attorney for collection, or in the event that Lender shall become a party either as plaintiff or as defendant in any action, suit, appeal or legal proceeding (including, without limitation, foreclosure, condemnation, bankruptcy, administrative proceedings or any proceeding wherein proof of claim is by law required to be filed), hearing, motion or application before any court or administrative body in relation to the Property or the lien and security interest granted or created hereby or herein, or for the recovery or protection of the Loan or the Property, or for the foreclosure of this Deed of Trust, or for the enforcement of the terms and conditions of the Loan Documents, Borrower shall indemnify, save,

8

defend and hold Lender harmless from and against any and all Losses incurred by Lender on account thereof and Borrower shall repay, on demand, all such Losses, together with interest thereon until paid at the lesser of the then applicable rate of interest of the Note; all of which sums, if unpaid, shall be added to and become a part of the Loan.

14.  DEFAULT RATE. Any sums not paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of the Note, this Deed of Trust or any of the other Loan Documents, and whether principal, interest or money owing for advancements pursuant to the terms of this Deed of Trust or any other Loan Document, shall bear interest until paid at the then applicable rate of interest of the Note; all of which sums shall be added to and become a part of the Loan.

15.  SAVINGS CLAUSE. Notwithstanding any provisions in the Note or in this Deed of Trust to the contrary, the total liability for payments in the nature of interest, including default interest and late payment charges, shall not exceed the limits imposed by the Laws of the State or, if controlling and not in violation of the Laws of the State, the Laws of the United States, relating to maximum allowable charges of interest. Lender shall not be entitled to receive, collect or apply, as interest on the Loan, any amount in excess of the maximum lawful rate of interest permitted to be charged by any Laws. In the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance of the Loan evidenced by the Note. If the unpaid principal balance of such Loan has been paid in full, any remaining excess shall be forthwith returned to Borrower.

16.  TIME IS OF THE ESSENCE; MONETARY AND NON-MONETARY DEFAULTS. It is understood by Borrower that time is of the essence hereof in connection with all obligations of Borrower herein and any of the other Loan Documents.

Lender, at its sole option, may declare the Loan, as well as all other monies secured or evidenced hereby or by any of the other Loan Documents, including, without limitation, all Prepayment Premiums (to the extent permitted by the Laws of the State) and late payment charges, to be in default and forthwith due and payable in the event:

(a)  Borrower defaults in the payment of the Note, whether of principal or interest, or both, or in the payment of any other sums of money referred to herein or in the Note or in any of the other Loan Documents, promptly and fully when the same shall be due, without notice or demand from Lender to Borrower in regard to such Monetary Default (as hereinafter defined).

(b)  Borrower breaches or defaults on any of the terms, covenants, conditions and agreements of the Note, this Deed of Trust or any other Loan Documents; or in the event that each and every one of said terms, covenants, conditions and agreements is not otherwise either duly, promptly and fully discharged or performed, and any such Non-Monetary Default (as hereinafter defined) remains uncured for a period of thirty (30) days after Written Notice thereof has been delivered from Lender to Borrower; unless such Non-Monetary Default cannot be cured within said thirty (30)-day period, in which event Borrower shall have a reasonable period of time to complete cure, provided that action to cure such Non-Monetary Default is promptly commenced within said thirty (30)-day period, and Borrower is, in Lender's sole judgment, not diminishing or impairing the value of the Property and is diligently pursuing a cure to completion, but in no event longer than ninety (90) days.

(c)  Any representation or warranty of Borrower or of its members, general partners, principals, affiliates, agents or employees, made herein or in any other Loan Document, in any

9

guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Lender shall have been false or misleading in any material respect when made.

(d)    Any seizure or forfeiture of the Property, or any portion thereof, or Borrower's interest therein, resulting from criminal wrongdoing or other unlawful action of Borrower, its affiliates, or any tenant in the Property under any federal, state or local law.

(e)    Any default occurs in the performance of any covenant or obligation of Borrower or any other party under any indemnity or guaranty delivered to Lender in connection with the Loan and such default continues beyond the expiration of applicable notice and cure periods.

Upon the occurrence of any one of the above events, and at the option of Lender, the principal of and the interest accrued on the Loan and all other sums secured by this Deed of Trust and the other Loan Documents shall immediately become due and payable as if all of said sums of money were originally stipulated to be paid on such day. In addition, Lender may avail itself of all rights and remedies provided by law or equity, and may foreclose or prosecute a suit at law or in equity as if all monies secured hereby had matured prior to its institution, anything in this Deed of Trust or any of the other Loan Documents to the contrary notwithstanding. Lender shall have no obligation to give Borrower notice of, or any period to cure, any Monetary Default or any Incurable Default (as hereinafter defined) prior to exercising its rights, powers, privileges and remedies.

As used herein, the term "Monetary Default" shall mean any default which can be cured by the payment of money such as, but not limited to, the payment of principal and interest due under the Note, or the payment of taxes, assessments and insurance premiums when due as provided in this Deed of Trust. As used herein, the term "Non-Monetary Default" shall mean any default that is not a Monetary Default or an Incurable Default. As used herein, the term "Incurable Default" shall mean either: (i) any voluntary or involuntary sale, assignment, mortgaging, encumbering or transfer of the Property or ownership interests in Borrower in violation of the covenants contained herein or any of the other Loan Documents; or (ii) if Borrower or any person or entity comprising Borrower should breach any of the provisions of this Deed of Trust.

The failure or omission on the part of Lender to exercise the option for acceleration of maturity of the Note and foreclosure of this Deed of Trust following any default as aforesaid or to exercise any other option or remedy granted hereunder to Lender when entitled to do so in any one or more instances, or the acceptance by Lender of partial payment of the Loan, whether before or subsequent to Borrower's default hereunder, shall not constitute a waiver of any such default or the right to exercise any such option or remedy, but such option or remedy shall remain continuously in force. Acceleration of the maturity of the Note, once claimed hereunder by Lender, at the option of Lender, may be rescinded by written acknowledgment to that effect by Lender, but the tender and acceptance of partial payments alone shall not in any way either affect or rescind such acceleration of maturity, nor act as a waiver, accord and satisfaction, modification, novation or similar defense.

17.    FORECLOSURE. Upon the occurrence of a default hereunder, Lender may declare a violation of any of the covenants hereof and elect to advertise the Property for sale and demand such sale. Then, upon filing notice of such election and demand for sale with the Trustee, the Trustee shall proceed to foreclose this Deed of Trust as a deed of trust as provided by applicable Colorado law. The Trustee shall sell and dispose of the Property and all the right, title and interest of Borrower, and its successors and assigns therein, at public auction as provided by applicable law of the State. Such sale(s) shall be a perpetual bar, both in law and equity, against Borrower and its successors and assigns, and all other persons claiming the Property or any part thereof by, through, from or under

10

Borrower. This instrument shall be effective as a mortgage as well as a deed of trust and upon the occurrence of a default, may be foreclosed as to any of the Property as a mortgage or in any manner permitted by the Laws of the State. The Property may be sold in one parcel, several parcels or groups of parcels as Lender may direct, and Lender shall be entitled to bid at the sale and, if Lender is the highest bidder for the Property or any part or parts thereof, Lender shall be entitled to purchase the same.

      18.   <u>PROTECTION OF LENDER'S SECURITY.</u> To the extent permitted by applicable law, Borrower shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws", now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, but hereby to the extent permitted by applicable law, waives the benefit of such laws. Borrower for itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Property marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Property sold as an entirety. To the extent permitted by applicable law, Borrower further waives and releases (a) all errors, defects and imperfections in any proceedings instituted by Lender under the Note, this Deed of Trust or any of the other Loan Documents; (b) all benefits that might accrue to Borrower by virtue of any present or future laws exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under civil process, or extension, exemption from civil process or extension of time for payment; and (c) all notices not specifically required by this Deed of Trust of default, or of Lender's exercise, or election to exercise, any option under this Deed of Trust. At any time after default hereunder, Lender, or Lender's agents or contractors, is authorized, without notice and in Lender's sole discretion, to enter upon and take possession of the Property or any part thereof, and to perform any acts which Lender deems necessary or proper to conserve the security interest herein intended to be provided by the Property, to operate any business or businesses conducted thereon, and to collect and receive all Rents thereof and therefrom, including those past due as well as those accruing thereafter.

      19.   <u>APPOINTMENT OF RECEIVER.</u> If, at any time after a default hereunder, Lender deems, in Lender's sole discretion, that a receivership may be necessary to protect the Property or its Rents, whether before or after maturity of the Note and whether before or at the time of or after the institution of foreclosure or suit to collect the Loan or to enforce this Deed of Trust or any of the other Loan Documents, Lender, as a matter of strict right and regardless of the value of the Property or the amounts due hereunder or secured hereby, or of the solvency of any party bound for the payment of such indebtedness, shall have the right, upon ex parte application and without notice to anyone, and by any court having jurisdiction, to the appointment of a receiver to take charge of, manage, preserve, protect and operate the Property; to collect the Rents thereof; to make all necessary and needful repairs; to pay all taxes, assessments, insurance premiums and other such charges against and expenses of the Property; to sell the Property through a receiver's sale, subject to appropriate approval of the receivership court; and to do such other acts as may by such court be authorized and directed; and after payment of the expenses of the receivership and the management of the Property, to apply the net proceeds of such receivership in reduction of the Loan or in such other manner as the said court shall direct notwithstanding the fact that the amount owing thereon may not then be due and payable or the said Loan is otherwise adequately secured. Such receivership shall, at the option of Lender, continue until full payment of all sums hereby secured, until sale of the Property by the receiver, or until title to the Property shall have passed by sale under this Deed of Trust. Borrower hereby specifically waives its right to object to the appointment of a receiver as aforesaid and hereby expressly agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender.

11

20. <u>RIGHTS AND REMEDIES CUMULATIVE; FORBEARANCE NOT A WAIVER.</u>
The rights and remedies herein provided are cumulative, and Lender, as the holder of the Note and of every other obligation secured hereby, may recover judgment thereon, issue execution therefor and resort to every other right or remedy available at law or in equity, without first exhausting any right or remedy available to Lender and without affecting or impairing the security of any right or remedy afforded hereby, and no enumeration of special rights or powers by any provisions hereof shall be construed to limit any grant of general rights or powers, or to take away or limit any and all rights granted to or vested in Lender by law or equity. Borrower further agrees that no delay or omission on the part of Lender to exercise any rights or powers accruing to it hereunder shall impair any such right or power, or shall be construed to be a waiver of any such default hereunder or an acquiescence therein; and every right, power and remedy granted herein or by law or equity to Lender may be exercised from time to time as often as Lender deems expedient.

Lender may resort to any security given by this Deed of Trust or to any other security now existing or hereafter given to secure the payment of the Loan, in whole or in part, and in such portions and in such order as may seem best to Lender in its sole discretion, and any such action shall not be considered as a waiver of any of the rights, benefits, liens or security interests evidenced by this Deed of Trust. To the full extent Borrower may do so, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force pertaining to the rights and remedies of sureties or providing for any appraisement, valuation, stay, extension or redemption, and Borrower, for Borrower and Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the Loan, notice of election to mature or declare due the whole of the Loan and all rights to a marshaling of the assets of Borrower, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and security interests hereby created. Borrower shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents or other matters whatever to defeat, reduce or affect the right of Lender under the terms of this Deed of Trust to a sale of the Property for the collection of the Loan without any prior or different resort for collection, or the right of Lender under the terms of this Deed of Trust to the payment of such indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatever. If any law referred to in this Section and now in force, of which Borrower or Borrower's heirs, devisees, representatives, successors and assigns and such other persons claiming any interest in the Property might take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section. Notwithstanding the existence of any other liens or security interests or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which the indebtedness secured hereby is satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Deed of Trust and any party who now or hereafter acquires a lien or security interest in the Property and who has actual or constructive notice of this Deed of Trust hereby expressly waives and relinquishes any and all rights to demand or require the marshaling of liens or the marshaling of assets by Lender in connection with the exercise of any of the remedies provided herein or permitted by applicable law. Borrower expressly waives and relinquishes any and all rights and remedies Borrower may have or be able to assert by reason of laws relating to the rights and remedies of sureties or guarantors.

21. <u>MODIFICATION NOT AN IMPAIRMENT OF SECURITY.</u> Lender, without notice and without regard to the consideration, if any, paid therefor, and notwithstanding the existence at that

12

time of any inferior mortgages, deeds of trust, or other liens thereon, may release any part of the security described herein or may release any person or entity liable for the Loan without in any way affecting the priority of this Deed of Trust, to the full extent of the Loan remaining unpaid hereunder, upon any part of the security not expressly released. Lender may, at its option and within Lender's sole discretion, also agree with any party obligated on the Loan or having any interest in the security described herein, to extend the time for payment of any part or all of the Loan, and such agreement shall not, in any way, release or impair this Deed of Trust, but shall extend the same as against the title of all parties having any interest in said security, which interest is subject to this Deed of Trust.

22.   MODIFICATION NOT A WAIVER. In the event Lender (a) releases, as aforesaid, any part of the security described herein or any person or entity liable for the Loan; (b) grants an extension of time for the payment of the Note; (c) takes other or additional security for the payment of the Note; or (d) waives or fails to exercise any rights granted herein, in the Note or any of the other Loan Documents, any said act or omission shall not release Borrower, subsequent purchasers of the Property or any part thereof, from any obligation or any covenant of this Deed of Trust, the Note or any of the other Loan Documents, nor preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any other default then made or any subsequent default.

23.   TRANSFER OF PROPERTY OR CONTROLLING INTEREST IN BORROWER. Without the prior written consent of Lender, the sale, transfer, assignment or conveyance of all or any portion of the Property, or the transfer, assignment or conveyance of a controlling interest in Borrower or its general partner, whether voluntary or by operation of law, without the prior written consent of Lender, shall constitute a default hereunder, and entitle Lender, at Lender's sole option, to accelerate all sums due on the Note.

24.   FURTHER ENCUMBRANCE PROHIBITED; SUBROGATION. So long as the Note remains unpaid, Borrower shall not, either voluntarily or involuntarily, permit the Property or any part thereof to become subject to any secondary or subordinate lien, mortgage, deed of trust, security interest or encumbrance of any kind whatsoever without the prior written consent of Lender, and the imposition of any such secondary lien, mortgage, including mezzanine financing with respect to Borrower, any entity comprising Borrower or Borrower's parent entities, deed of trust, security interest or encumbrance without the approval of Lender shall constitute a default hereunder, and entitle Lender, at Lender's sole option, to declare the outstanding principal balance of the Note, all accrued and unpaid interest thereon, late payment charges and any other amounts secured hereby to be and become immediately due and payable in full. In the event that Lender shall hereafter give its written consent to the imposition of any such secondary lien, mortgage, deed of trust, security interest or other encumbrance upon the Property, Lender, at Lender's sole option, shall be entitled to accelerate the maturity of the Note and exercise any and all remedies provided and available to Lender hereunder and in the other Loan Documents in the event that the holder of any such secondary lien or encumbrance shall institute foreclosure or other proceedings to enforce the same; it being understood and agreed that a default under any instrument or document evidencing, securing or secured by any such secondary lien or encumbrance shall be and constitute a default hereunder. In the event all or any portion of the proceeds of the Loan are used for the purpose of retiring debt or debts secured by prior liens on the Property, Lender shall be subrogated to the rights and lien priority of the holder or holders of the lien or liens so discharged.

25.   CONVEYANCE OF MINERAL RIGHTS PROHIBITED. Borrower agrees that the making of any oil, gas or mineral lease, or the sale or conveyance of any mineral interest or right to explore for minerals under, through or upon the Property, would impair the value of the Property, and

13

that Borrower shall have no right, power or authority to lease the Property, or any part thereof, for oil, gas or other mineral purposes, or to grant, assign or convey any mineral interest of any nature, or the right to explore for oil, gas and other minerals, without first obtaining Lender's express written permission therefor, which permission shall not be valid until recorded among the Public Records of Jefferson County, in the State. Borrower further agrees that if Borrower shall make, execute, or enter into any such lease or attempt to grant any such mineral rights without such prior written permission of Lender, then Lender shall have the option, without notice, to declare the same to be a default hereunder, and to declare the Loan immediately due and payable in full. Whether or not Lender shall consent to such lease or grant of mineral rights, Lender shall receive the entire consideration to be paid for any such lease or grant of mineral rights, with the same to be applied to the Loan notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Loan is otherwise adequately secured; provided, however, that the acceptance of such consideration shall in no way impair the lien of this Deed of Trust on the Property or cure any existing Monetary Default.

26. <u>CROSS-DEFAULT.</u> The Note is also secured by the terms, conditions and provisions of the Collateral Assignment and, additionally, may be secured by contracts or agreements of guaranty or other security instruments. The terms, covenants, conditions and agreements of each security instrument shall be considered a part hereof as fully as if set forth herein verbatim. Any default under this Deed of Trust or any of the other Loan Documents shall constitute a default hereunder and under each of the other Loan Documents. Notwithstanding the foregoing, the enforcement or attempted enforcement of this Deed of Trust or any of the other Loan Documents now or hereafter held by Lender shall not prejudice or in any manner affect the right of Lender to enforce any other Loan Document; it being understood and agreed that Lender shall be entitled to enforce this Deed of Trust and any of the other Loan Documents now or hereafter held by it in such order and manner as Lender, in its sole discretion, shall determine.

27. <u>FUTURE ADVANCES SECURED.</u> This Deed of Trust shall secure not only existing indebtedness, but also future advances, whether such advances are obligatory or to be made at the option of Lender. Upon the request of Borrower, and at Lender's option prior to release of this Deed of Trust, Lender may make future advances to Borrower. All future advances with interest thereon shall be secured by this Deed of Trust to the same extent as if such future advances were made on the date of the execution of this Deed of Trust unless the parties shall agree otherwise in writing, but the total secured indebtedness shall not exceed at any one time a maximum principal amount equal to double the face amount of the Note plus interest and costs of collection, including court costs and Reasonable Attorneys' Fees. Any advances or disbursements made for the benefit or protection of or the payment of taxes, assessments, levies or insurance upon the Property, with interest on such disbursements as provided herein, shall be added to the principal balance of the Note and collected as a part thereof. To the extent that this Deed of Trust may secure more than one note, a default in the payment of any such note shall constitute a default in the payment of all such notes.

28. <u>SUCCESSORS AND ASSIGNS; TERMINOLOGY.</u> The provisions hereof shall be binding upon Borrower and the heirs, personal representatives, trustees, successors and assigns of Borrower, and shall inure to the benefit of Lender, its successors and assigns. Where more than one Borrower is named herein, the obligations and liabilities of said Borrower shall be joint and several.

Wherever used in this Deed of Trust, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein: (a) the word "Borrower" shall mean Borrower and/or any subsequent owner or owners of the Property; (b) the word "Lender" shall mean Lender or any subsequent holder or holders of this Deed of Trust; (c) the word "Note" shall mean the Note(s) secured

by this Deed of Trust; and (d) the word "person" shall mean an individual, trustee, trust, corporation, partnership, limited liability company, limited liability partnership, joint venture or unincorporated association. As used herein, the phrase "Reasonable Attorneys' Fees" shall mean fees charged by attorneys selected by Lender based upon such attorneys' then prevailing hourly rates as opposed to any statutory presumption specified by any statute then in effect in the State. As used herein words of any gender shall include all other genders.

29.    NOTICES. All notices, reports, requests or other written instruments required or permitted hereunder shall be in writing, signed by the party giving or making the same, and shall be sent hand-delivered, effective upon receipt, sent by United States Express Mail or by a nationally recognized overnight courier, effective upon receipt, or sent by United States registered or certified mail, postage prepaid, with return receipt requested, deemed effective on the earlier of the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, addressed to the party intended to receive the same at the address set forth below or at such other address as shall be given in writing by any party to another ("Written Notice"):

| | |
|---|---|
| If to Borrower: | Land Securities Investors Ltd.<br>Attn:  Alan R. Fishman<br>8361 N. Rampart Range Rd.<br>Littleton, CO   80125 |
| With a copy to: | Lee M. Kutner<br>Kutner Mill Brinen, P.C.<br>303 East 17th Avenue, Suite 500<br>Denver, CO   80203 |
| To Lender: | TIC Lending, LLC<br>5460 S. Quebec Street, #300<br>Greenwood Village, CO   80111 |
| With a copy to: | Fairfield and Woods, P.C.<br>Attn:  Caroline C. Fuller<br>1700 Lincoln Street, Suite 2400<br>Denver, CO   80203 |

30.    GOVERNING LAW; WAIVER OF JURY TRIAL; SEVERABILITY. THE PARTIES HERETO, TO THE FULL EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES HEREBY THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, AGAINST LENDER, ITS SUCCESSORS AND ASSIGNS, BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS, THE LOAN OR ANY COURSE OF CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, LENDER'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH

LENDER), IN CONNECTION WITH THE LOAN OR THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, IN ANY COUNTERCLAIM WHICH ANY PARTY MAY BE PERMITTED TO ASSERT THEREUNDER, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. IN NO EVENT SHALL LENDER, ITS SUCCESSORS, ASSIGNS OR PARTICIPANTS BE LIABLE FOR SPECIFIC PERFORMANCE, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, LOSS OF BUSINESS PROFITS OR OPPORTUNITY) AND BY ITS EXECUTION HEREOF, BORROWER WAIVES ANY RIGHT TO CLAIM OR SEEK ANY SUCH DAMAGES. This Deed of Trust and the rights and obligations of the parties hereunder shall be governed by, and construed in accordance with, the internal laws of the State, without regard to principles of conflicts of laws. The parties hereto irrevocably (a) agree that any suit, action or other legal proceeding arising out of or relating to this Deed of Trust may be brought in a court of record in the State or in the courts of the United States of America located in such State, (b) consent to the non-exclusive jurisdiction of each such court in any suit, action or proceeding, and (c) waive any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Deed of Trust, then such clauses or provisions only shall be held for naught, as though not herein contained, and the remainder of this Deed of Trust shall remain operative and in full force and effect.

31.    RIGHTS OF LENDER CUMULATIVE. The rights of Lender arising under the terms, covenants, conditions and agreements contained in this Deed of Trust shall be separate, distinct and cumulative, and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provisions, anything herein or otherwise to the contrary notwithstanding. If Borrower is comprised of more than one person or entity, then the liability of each such person and entity hereunder shall be joint and several.

32.    MODIFICATIONS. This Deed of Trust cannot be changed, altered, amended or modified except by an agreement in writing and in recordable form, executed by both Borrower and Lender.

33.    LENDER IS NOT A JOINT VENTURER OR PARTNER. Borrower and Lender acknowledge and agree that in no event shall Lender be deemed to be a partner or joint venturer with Borrower or any member of Borrower. Without limitation of the foregoing, Lender shall not be deemed to be a partner or joint venturer on account of its becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust or pursuant to any other instrument or document evidencing or securing any of the indebtedness secured hereby, or otherwise.

34.    CAPTIONS. The captions set forth at the beginning of the various Sections of this Deed of Trust are for convenience only and shall not be used to interpret or construe the provisions of this Deed of Trust.

35.    REPLACEMENT DOCUMENTS. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower, at its expense, will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or

16

mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

      36.    <u>SOLE DISCRETION OF LENDER.</u> Wherever pursuant to this Deed of Trust Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

      IN WITNESS WHEREOF, Borrower has caused this Deed of Trust to be executed as of the day and year first above written.

                Land Securities Investors Ltd.

                        By:  Sunset Management Services, Inc., General Partner

                        By:  _____
                        Alan R. Fishman, President

17

STATE OF _____        §
                                              §   ss.
COUNTY OF                          §

     The foregoing instrument was acknowledged before me this _____ day of 2013, by Alan R. Fishman, as President of Sunset Management Services, Inc., General Partner of Land Securities Investors, Ltd.

     Witness my hand and official seal.

     My commission expires: _____

                     Notary Public

                   _____


Recorded at the Request of and When Recorded Return to:


Fairfield and Woods, P.C.
Attn:   Caroline C. Fuller
1700 Lincoln Street, Suite 2400
Denver, CO   80203-4524

                         _____

18

<u>Exhibit A</u>

Lot 1 Jefferson Corporate Center, according to the Plat thereof recorded December 11, 1995 under Reception No. F0156911, Jefferson County, Colorado

A-1

Exhibit B

*2012 Real Property Taxes*

A-2

<u>DEED OF TRUST AND SECURITY AGREEMENT</u>

This DEED OF TRUST AND SECURITY AGREEMENT (the "Deed of Trust") is made and executed as of _____, 2013, by LAND SECURITIES INVESTORS LTD., a Colorado limited partnership ("Borrower"), whose address is 8361 N. Rampart Range Rd., Littleton, CO 80125, to the Public Trustee of the County of Douglas, State of Colorado (the "Trustee"), for the benefit of TIC Lending, LLC, a Colorado limited liability company, its successors and assigns ("Lender"), having its principal office at 5460 S. Quebec Street, #300, Greenwood Village, CO 80111, or at such other place as Lender may from time to time designate.

W I T N E S S E T H :

WHEREAS, Borrower is indebted to Lender in the original principal sum of $250,000.00 with interest thereon (the "Loan"), which Loan is evidenced and represented by that certain Note of even date herewith (the "Note"), both principal and interest being payable as therein provided, with the first payment on the Note becoming due and payable on the date of disbursement, and all amounts remaining unpaid thereon being finally due and payable on December 31, 2013, and the term "Note" shall include all other notes given in substitution, modification, increase, renewal or extension of the original Note described herein, in whole or in part; and

WHEREAS, Lender, as a condition precedent to the extension of credit and the making of the Loan has required that Borrower provide Lender with security for the repayment of the Loan as well as for the performance, observance and discharge by Borrower of various terms, covenants, conditions and agreements made by Borrower to, with, in favor of and for the benefit of Lender with respect to the Loan and such security;

NOW THEREFORE, in consideration of and in order to secure the repayment of the Loan evidenced and represented by the Note, together with interest on the Loan, as well as the payment of all other sums of money secured hereby, including, but not limited to, all Obligations arising under the Loan Agreement between Borrower and Lender, as hereinafter provided; to secure the observance, performance and discharge by Borrower of all terms, covenants, conditions and agreements set forth in the Note, this Deed of Trust and in the other Loan Documents (as hereinafter defined); in order to charge the properties, interests and rights hereinafter described with such payment, observance, performance and discharge; and in consideration of the sum of one dollar paid by Lender to Borrower, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged by Borrower, Borrower does hereby grant, bargain, sell, convey, assign, transfer, pledge, deliver, hypothecate, warrant and confirm unto the Trustee, in trust, with power of sale and right of entry and possession, the following described properties, including all rights, interests, replacements, substitutions and additions thereto, therein or therefor (collectively, the "Property"):

(i)    All that certain piece, parcel or tract of land or real property of which Borrower is now seized and in actual or constructive possession, situated in the County of Douglas, and State of Colorado (the "State"), and being more particularly described on **Exhibit A** attached hereto and by this reference made a part hereof (the "Real Property");

1

(ii)    All buildings, structures and other improvements of any kind, nature or description now or hereafter erected, constructed, placed or located upon the Real Property (the "Improvements"), including, without limitation, any and all additions to, substitutions for or replacements of such Improvements;

(iii)    All minerals, royalties, gas rights, water, water rights, water stock, flowers, shrubs, lawn plants, crops, trees, timber and other emblements now or hereafter located on, under or above all or any part of the Real Property;

(iv)    All of Grantor's right, title and interest, if any, in water rights and conditional water rights that are appurtenant to or that have been used or are intended for use in connection with the Property, including but not limited to (i) ditch, well, pipeline, spring and reservoir rights, whether or not adjudicated or evidenced by any well or other permit, (ii) all rights with respect to nontributary groundwater (and other groundwater that is subject to the provisions of Colorado Revised Statutes Section 37-90-137(4) or the corresponding provisions of any successor statute) underlying said land, (iii) any permit to construct any water well, water from which is intended to be used in connection with the Property, and (iv) all of Grantor's right, title and interest under any decreed or pending plan of augmentation or water exchange plan.

(v)    All and singular, the tenements, hereditaments, strips and gores, rights-of-way, easements, privileges, profits and other appurtenances now or hereafter belonging or in any way appertaining to the Property, including, without limitation, all right, title and interest of Borrower in any after-acquired right, title, interest, remainder or reversion in and to the beds of any ways, streets, avenues, roads, alleys, passages and public places, open or proposed, in front of, running through, adjoining or adjacent to the Real Property (the "Appurtenances");

(vi)    Any and all leases, licenses, contracts, rents, license fees, royalties, issues, revenues, profits, proceeds, deposits, income and other benefits, including accounts receivable, termination fees, of, accruing to or derived from the Real Property, Improvements and Appurtenances, and any business or enterprise presently situated or hereafter operated thereon and therewith and all of Borrower's interest under any and all lease guaranties, letters of credit, and any other credit support furnished to Borrower in connection with any of the foregoing (the "Rents"); and

(vii)    Any and all awards, payments or settlements, including interest thereon, and the right to receive the same, as a result of: (a) the exercise of the right of eminent domain; (b) the alteration of the grade of any way, street, avenue, road, alley, passage or public place; (c) any other injury, damage, casualty or claim relating to the taking of, or decrease in the value of, the Real Property, Improvements or Appurtenances; or (d) proceeds of insurance awards, to the extent of all amounts which may be secured by this Deed of Trust at the date of any such award or payment including, but not limited to, Reasonable Attorneys' Fees (as hereinafter defined), costs and disbursements incurred by Lender in connection with the collection of such award or payment.

TO HAVE AND TO HOLD the foregoing Property and the rights hereby granted for its use and benefit unto the Trustee and its successors and assigns in fee simple forever.

2

Borrower hereby covenants and warrants with and to Lender that Borrower is indefeasibly seized of the Property and has good right, full power and lawful authority to convey and encumber all of the same as aforesaid; that Borrower hereby fully warrants the title to the Property and will defend the same and the validity and priority of the lien and encumbrance of this Deed of Trust against the lawful claims of all persons whomsoever; and Borrower further warrants that the Property is free and clear of all liens and encumbrances of any kind, nature or description, save and except only (with respect to said Real Property, Improvements and Appurtenances) identified on **Exhibit B** attached hereto (the "Permitted Exceptions").

If Borrower shall pay to Lender the Loan and if Borrower shall duly, promptly and fully perform, discharge, execute, effect, complete and comply with and abide by each and every one of the terms, covenants, conditions and agreements of the Note, this Deed of Trust and all other Loan Documents, then this Deed of Trust and the estates and interests hereby granted and created shall cease, terminate and be null and void, and shall be discharged of record at the expense of Borrower.

Borrower, for the benefit of Lender and its successors and assigns, does hereby expressly covenant and agree as follows:

1.      PAYMENT OF PRINCIPAL AND INTEREST. Borrower shall pay the principal of the Loan, together with all interest thereon, in accordance with the terms, covenants and conditions of the Note, promptly at the times, at the place and in the manner that said principal and interest shall become due, and shall promptly and punctually pay all other sums required to be paid by Borrower pursuant to the terms, covenants and conditions of the Note, this Deed of Trust, and all other documents and instruments executed as further evidence of, as additional security for or executed in connection with the Loan (collectively, the "Loan Documents"), including, any and all additional advances made by Lender to protect or preserve the Property or the lien or security interest created hereby on the Property, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Borrower's obligations hereunder or under the other Loan Documents or for any other purpose provided herein or in the other Loan Documents.

2.      PERFORMANCE OF OTHER OBLIGATIONS. Borrower shall perform, comply with and abide by each and every one of the terms, covenants, conditions and agreements contained and set forth in the Note, this Deed of Trust and the other Loan Documents; shall comply with all Laws (as hereinafter defined); shall perform all of its obligations under any term, covenant, condition, restriction or agreement of record affecting the Property; and shall ensure that at all times the Property constitutes one or more legal lots capable of being conveyed without violation of any subdivision or platting laws, codes, ordinances, statutes, rules, regulations, or other laws relating to the division, separation or subdivision of real property.

3.      PRESERVATION AND MAINTENANCE OF PROPERTY; ACCESSIBILITY; HAZARDOUS SUBSTANCES.

(a)      Borrower shall keep all Improvements now existing or hereafter erected on the Real Property in good order and repair, and shall not do or permit any waste, impairment or deterioration thereof or thereon; shall not alter, remove or demolish any of the Improvements or any fixtures and personal property attached or appertaining thereto, without the prior written consent of Lender; shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Property or any part thereof; and shall not do or permit any other act whereby the Property shall become less valuable, be used for purposes contrary to applicable Law or be used in any manner which will

3

increase the premium for or result in a termination or cancellation of the insurance policies hereinafter required to be kept and maintained on the Property.

        (b)    Borrower at all times shall keep the Property and ground water of the Property free of Hazardous Substances (as hereinafter defined) and any liens arising in connection therewith. Borrower shall not and shall not knowingly permit its tenants or any third party requiring the consent of Borrower to enter the Property, to use, generate, manufacture, treat, store, release, threaten release, transport on or over, emit or dispose of Hazardous Substances in, on, over, under or about the Property, including the ground water of the Property, in violation of any federal, regional, state or local law, code, ordinance, statute, rule, regulation, decision or order currently in existence or hereafter enacted or rendered, including, but not limited to, those enumerated in the Indemnity Agreement of even date herewith executed by Borrower ("Hazardous Substances Laws"). Borrower shall give Lender prompt Written Notice (as hereinafter defined) of any claim by any person, entity or governmental agency that a significant release or disposal of Hazardous Substances has occurred in, on, over, under or about the Property, including the ground water of the Property, in excess of those permitted by the Hazardous Substances Laws, whether caused by Borrower, any tenant or any third party. Borrower, through its professional engineers and at Borrower's sole cost, shall promptly and thoroughly investigate any suspected release of Hazardous Substances in, on, over, under or about the Property, including the ground water of the Property. Borrower shall forthwith remove, repair, remediate, clean up and/or detoxify any Hazardous Substances found in, on, over, under or about the Property, or in the ground water of the Property, to the extent such actions are required by any applicable Hazardous Substances Laws, and whether or not Borrower was responsible for the existence of the Hazardous Substances in, on, over, under or about the Property or the ground water of the Property. Hazardous Substances shall include, but not be limited to, substances defined as "hazardous substances," "hazardous materials," or "toxic substances" under any Hazardous Substances Laws. In addition, Borrower shall not incorporate any underground storage tanks into the Real Property without the prior written consent of Lender, and shall ensure that all tanks currently on the Real Property comply with current Hazardous Substances Laws and underground storage tank regulations and are properly registered. In the event that the Property is repaired, renovated or demolished in any manner that has the potential to result in the generation, disturbance or disposal of any Hazardous Substances, all such work shall be performed in compliance with Law by contractors adequately insured and properly licensed in the State. A final report demonstrating satisfactory completion of such work and the legal disposal of any Hazardous Substances shall be provided to Lender by the contractor.

        Borrower hereby agrees to indemnify and defend Lender and hold Lender harmless from and against any and all losses, liabilities, damages, injuries, costs, expenses, fines, fees, suits, actions, debts, obligations, and claims of any and every kind whatsoever, including Reasonable Attorneys' Fees (collectively, "Losses") paid, incurred or suffered by, or asserted against, Lender for, with respect to, or as a direct or indirect result of the presence in, on, over, under or about, or the escape, seepage, leakage, spillage, discharge, emission or release from the Property of any Hazardous Substances (including, without limitation, any losses, liabilities, damages, injuries, costs, expenses or claims asserted or arising under any Hazardous Substances Laws), regardless of the source of origination and whether or not caused by, or within the control of, Borrower **AND INCLUDING ANY CLAIMS OF LENDER'S NEGLIGENCE OR STRICT LIABILITY**, but excluding Lender's willful misconduct or gross negligence. Liability under this Section 3(b) and similar provisions in this Deed of Trust and the other Loan Documents concerning Hazardous Substances shall survive repayment of the Note and satisfaction of this Deed of Trust unless at such time Borrower provides Lender with an environmental report prepared by an environmental engineer approved by Lender demonstrating that the Property is free of Hazardous Substances and is not or is no longer in violation of any Hazardous Substances Laws. Borrower shall not be liable under this

indemnity if the Property becomes contaminated by Hazardous Substances subsequent to Lender's acquisition of the Property by foreclosure or acceptance by Lender of a deed in lieu of foreclosure, or subsequent to any transfer of ownership of the Property that was approved or authorized by Lender in writing; provided that such transferee assumes in writing all of the obligations of Borrower with respect to compliance with Hazardous Substances Laws under this Deed of Trust and under the other Loan Documents. The burden of proof under this Section 3(b) with regard to establishing the date upon which Hazardous Substances were placed, appeared or released in, on, over, under or about the Property shall be upon Borrower.

(c)    Lender and/or its agents shall have the right and shall be permitted, but shall not be required, at all reasonable times, to enter upon and inspect the Property to insure compliance with the foregoing covenants, and any and all other terms, covenants, conditions and agreements set forth in this Deed of Trust.

4.    PAYMENT OF TAXES, ASSESSMENTS AND OTHER CHARGES. Borrower shall pay all taxes, assessments and other charges as already levied or assessed, or that may be hereafter levied or assessed, upon or against the Property, when the same shall become due and payable according to Law, before delinquency and before any interest or penalty shall attach thereto, and to deliver official receipts evidencing the payment of the same to Lender not later than thirty (30) days following the payment of the same; *provided, however,* that Borrower may pay any taxes, assessments, or other charges incurred prior to Borrower's bankruptcy filing on January 29, 2013 in accordance with the terms of any plan of reorganization confirmed in Borrower's bankruptcy case. Borrower shall have the right to contest, in good faith and in accordance with applicable Laws and procedures, the proposed assessment of ad valorem taxes or special assessments by governmental authorities having jurisdiction over the Property; provided, however, Borrower shall give Written Notice of its intent to bring such an action to Lender. Any such contest, however, shall not relieve Borrower of its obligation to pay all taxes, assessments and public charges in full as required by the first sentence of this Section 4, and Lender may, in its sole discretion, require Borrower to post a bond or other collateral satisfactory to Lender (and acceptable to the title company insuring this Deed of Trust to insure over said lien, charge or encumbrance) as a result of Borrower's act.

5.    PAYMENT OF LIENS, CHARGES AND ENCUMBRANCES. Borrower shall immediately pay and discharge from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, realtors, brokers and others which if unpaid, might result in, or permit the creation of, a lien, charge or encumbrance upon the Property or any part thereof, or on the Rents, arising therefrom and, in general, to do or cause to be done everything necessary so that the lien of this Deed of Trust shall be fully preserved, at the sole cost of Borrower, without expense to Lender. Borrower shall have the right to contest, in good faith and in accordance with applicable Laws and procedures, mechanics', materialmen's and other such liens filed against the Property; provided, however, that Borrower shall give Written Notice to Lender of its intent to bring such action and Lender may, in Lender's sole discretion, require Borrower to post a bond or other collateral satisfactory to Lender (and acceptable to the title company insuring this Deed of Trust) as a result of Borrower's act.

6.    PAYMENT OF JUNIOR ENCUMBRANCES. Borrower shall permit no default or delinquency under any other lien, imposition, charge or encumbrance against the Property, even though junior and inferior to the lien of this Deed of Trust; provided, however, the foregoing shall not be construed to permit any such additional lien or encumbrance against the Property, other than the Permitted Exceptions.

5

7.    <u>LIABILITY INSURANCE.</u> Borrower shall carry and maintain such commercial general liability insurance in an adequate amount as may from time to time be required by Lender, taking into consideration the type of property being insured and the corresponding liability exposure, on forms, with deductibles, in amounts and with such company or companies licensed to do business in the State and as may be acceptable to Lender. All such commercial general liability insurance shall be underwritten with a company or companies which have and maintain a rating equivalent to at least A:X as shown in the most recent Best's Key Rating Guide. The original policy or policies and all renewals thereof are hereby assigned to Lender as additional security for the Loan. Borrower shall provide Lender an ACORD Form 25 certificate of insurance. Such policy or policies of insurance shall name Lender as an additional insured and shall provide for not less than thirty (30) days prior Written Notice to Lender of any intent to modify, cancel, non-renew or terminate the policy or policies or the expiration of such policy or policies of insurance, or the exclusion of any individual risk such as acts of terrorism. Not less than fifteen (15) days prior to the expiration dates of each policy or policies required of Borrower hereunder, Borrower will deliver to Lender a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment and renewal satisfactory to Lender. In the event of foreclosure of this Deed of Trust or other transfer of title to the Property in extinguishment of the Loan, all right, title and interest of Borrower, in and to any insurance policies then in force, including any rights to unearned premiums, and in and to insurance proceeds then payable, shall pass to the purchaser or grantee. In case of Borrower's failure to keep the Property properly insured as required herein, Lender, its successors or assigns, may, at its option (but shall not be required to), acquire such insurance as required herein at Borrower's sole expense.

8.    <u>COMPLIANCE WITH LAWS.</u>  Borrower shall observe, abide by and comply with all federal, regional, state and local laws, codes, ordinances, statutes, rules, regulations, decisions, orders, requirements or decrees relating to the Property enacted, promulgated or issued by any federal, state, county or local governmental or quasi-governmental authority or any agency or subdivision thereof having jurisdiction over Borrower or the Property, which now or hereafter affect Borrower or the Property, including Hazardous Substances Laws (collectively, the "Laws"), and to observe and comply with all conditions and requirements necessary to preserve and extend any and all rights, licenses, permits (including, but not limited to, zoning, variances, special exceptions and nonconforming uses), privileges, franchises and concessions which are applicable to the Property, or which have been granted to or contracted for by Borrower in connection with any existing, presently contemplated or future uses of the Property.

9.    <u>EXECUTION OF ADDITIONAL DOCUMENTS.</u> Borrower shall do, make, execute, acknowledge, witness and deliver all deeds, conveyances, mortgages, deeds of trust, assignments, estoppel certificates, subordination non-disturbance and attornments, notices of assignments, transfers, assurances, security agreements, financing statements and renewals thereof, and all other instruments or other acts necessary, as Lender shall from time to time require for the purpose of better assuring, conveying, assigning, transferring, securing and confirming unto Lender the Property and rights hereby encumbered, created, conveyed, assigned or intended now or hereafter so to be encumbered, created, conveyed or assigned, or which Borrower may now be or may hereafter become bound to encumber, create, convey or assign to Lender, or for the purpose of carrying out the intention or facilitating the performance of the terms of this Deed of Trust, or for filing, registering or recording this Deed of Trust, and to pay all filing, registration or recording fees and all taxes, costs and other expenses, including Reasonable Attorneys' Fees, incident to the preparation, execution, acknowledgment, delivery and recordation of any of the same. Without limiting any other provision herein, Borrower hereby authorizes Lender to file one or more financing statements and any renewal or continuation statements thereof, describing the Property and the

6

proceeds of the Property, including, without limitation, a financing statement covering "all assets of Borrower all proceeds therefrom, and all rights and privileges with respect thereto."

10.    AFTER-ACQUIRED PROPERTY SECURED. Borrower shall subject to the lien of this Deed of Trust all right, title and interest of Borrower in and to all extensions, improvements, betterments, renewals, substitutions and replacements of, and all additions and appurtenances to, the Property hereinabove described, hereafter acquired by or released to Borrower, or constructed, assembled or placed by Borrower on the Real Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further mortgage, deed of trust, encumbrance, conveyance, assignment or other act by Borrower, as fully, completely and with the same effect as though now owned by Borrower and specifically described herein, but at any and all times, Borrower will execute and deliver to Lender any and all such further assurances, mortgages, deeds of trust, conveyances, security agreements, financing statements or assignments thereof or security interests therein as Lender may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust.

11.    PAYMENTS BY LENDER ON BEHALF OF BORROWER. Except as otherwise provided in Section 4 hereof, Borrower shall make payment of any taxes, assessments or public charges on or with respect to the Property before the same shall become delinquent and shall make payment of any insurance premiums or other charges, impositions, or liens herein or elsewhere required to be paid by Borrower as they become due and, if Borrower shall fail so to do or if Lender reasonably believes that Borrower is not going to make such payment, then Lender, at its sole option, but without obligation to do so, may make payment or payments of the same and also may redeem the Property from tax sale without any obligation to inquire into the validity of such taxes, assessments, tax sales, charges, impositions or liens. In the case of any such payment by Lender, Borrower agrees to reimburse Lender, upon demand therefor, the amount of such payment and of any fees and expenses attendant in making the same, together with interest thereon as provided for in the Note; and until paid such amounts and interest shall be added to and become part of the Loan to the same extent that this Deed of Trust secures the repayment of the Loan. Borrower's failure to reimburse Lender within fifteen days of receiving Lender's demand shall be a Monetary Default (as hereinafter defined) and subject to the terms of Section 16 hereof. In making payments authorized by the provisions of this Section 11, Lender may do so whenever, in Lender's sole judgment and discretion, such advance or advances are necessary or desirable to protect the full security intended to be afforded by this Deed of Trust. Neither the right nor the exercise of the rights herein granted to Lender to make any such payments as aforesaid shall preclude Lender from exercising its option to cause the Loan to become immediately due and payable by reason of Borrower's default in making such payments as hereinabove required.

12.    CONDEMNATION; EMINENT DOMAIN. All claims and rights of action for, and all awards and other compensation heretofore or hereafter made to Borrower and all subsequent owners of the Property in any taking by eminent domain, recovery for inverse condemnation or by deed in lieu thereof, whether permanent or temporary, of all or any part of the Property or any easement or any appurtenance thereto, including severance and consequential damages and change in grade of any way, street, avenue, road, alley, passage or public place, are hereby assigned to Lender. Borrower hereby irrevocably appoints Lender as its attorney-in-fact, coupled with an interest, and authorizes, directs and empowers Lender, at the option of Lender as said attorney-in-fact, on behalf of Borrower, its successors and assigns, to adjust or compromise the claim for any such award, and alone to collect and receive the proceeds thereof, to give proper

7

receipts and acquittances therefor and, after deducting any expenses of collection, at Lender's sole discretion and option either:

      (a)    in the event there is a material adverse change in the value of the Property as a result of such condemnation or taking by eminent domain, as determined by Lender, in Lender's sole discretion, to apply the net proceeds as a credit upon any portion of the Loan, as selected by Lender, notwithstanding the fact that the amount owing thereon may not then be due and payable, or that the Loan is otherwise adequately secured. In the event Lender applies such awards to the reduction of the outstanding Loan, such proceeds shall be applied at par, without any Prepayment Premium, and the monthly installments due and payable under the Note shall be reduced accordingly as calculated by Lender; however, no such application shall serve to cure an existing default of Borrower; or

      (b)    in the event there is no material adverse change in the value of the Property as a result of such condemnation or taking by eminent domain, as determined by Lender, in Lender's sole discretion, to hold said proceeds without any allowance of interest, and make the same available for restoration or rebuilding of the Improvements. If the proceeds are made available by Lender to reimburse Borrower for the cost of said restoration or rebuilding, any surplus which may remain out of said award after payment of such cost of restoration or rebuilding shall be applied on account of the Loan at par, without any Prepayment Premium, notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Loan may otherwise be adequately secured.

Borrower further covenants and agrees to give Lender immediate notice of the actual or threatened commencement of any proceedings under eminent domain and to deliver to Lender copies of any and all papers served in connection with any such proceedings. Borrower further covenants and agrees to make, execute and deliver to Lender, at any time or times, upon request, free, clear and discharged of any encumbrance of any kind whatsoever, any and all further assignments and/or other instruments deemed necessary by Lender for the purpose of validly and sufficiently assigning all such awards and other compensation heretofore or hereafter made to Lender (including the assignment of any award from the United States government at any time after the allowance of the claim therefor, the ascertainment of the amount thereof and the issuance of the warrant for payment thereof).

It shall be a default hereunder if either: (i) any part of any of the Improvements situated on the Real Property shall be condemned by any governmental authority having jurisdiction; or (ii) a portion of the Real Property shall be condemned such that the remaining Property is in violation of applicable parking, zoning, platting, or other Laws, or fails to comply with the terms of the Occupancy Leases with Major Tenants, then in each case, Lender shall be entitled to exercise any or all remedies provided or referenced in this Deed of Trust or the other Loan Documents, including the application of condemnation proceeds to the outstanding principal balance of the Note at par, without any Prepayment Premium, and the right to accelerate the maturity date of the Note and require payment in full without the imposition of a Prepayment Premium.

    13.    <u>COSTS OF COLLECTION.</u> In the event that the Note is placed in the hands of an attorney for collection, or in the event that Lender shall become a party either as plaintiff or as defendant in any action, suit, appeal or legal proceeding (including, without limitation, foreclosure, condemnation, bankruptcy, administrative proceedings or any proceeding wherein proof of claim is by law required to be filed), hearing, motion or application before any court or administrative body in relation to the Property or the lien and security interest granted or created hereby or herein, or for the recovery or protection of the Loan or the Property, or for the foreclosure of this Deed of Trust, or for the enforcement of the terms and conditions of the Loan Documents, Borrower shall indemnify, save,

defend and hold Lender harmless from and against any and all Losses incurred by Lender on account thereof and Borrower shall repay, on demand, all such Losses, together with interest thereon until paid at the lesser of the then applicable rate of interest of the Note; all of which sums, if unpaid, shall be added to and become a part of the Loan.

14.    DEFAULT RATE. Any sums not paid when due, whether maturing by lapse of time or by reason of acceleration under the provisions of the Note, this Deed of Trust or any of the other Loan Documents, and whether principal, interest or money owing for advancements pursuant to the terms of this Deed of Trust or any other Loan Document, shall bear interest until paid at the then applicable rate of interest of the Note; all of which sums shall be added to and become a part of the Loan.

15.    SAVINGS CLAUSE. Notwithstanding any provisions in the Note or in this Deed of Trust to the contrary, the total liability for payments in the nature of interest, including default interest and late payment charges, shall not exceed the limits imposed by the Laws of the State or, if controlling and not in violation of the Laws of the State, the Laws of the United States, relating to maximum allowable charges of interest. Lender shall not be entitled to receive, collect or apply, as interest on the Loan, any amount in excess of the maximum lawful rate of interest permitted to be charged by any Laws. In the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance of the Loan evidenced by the Note. If the unpaid principal balance of such Loan has been paid in full, any remaining excess shall be forthwith returned to Borrower.

16.    TIME IS OF THE ESSENCE; MONETARY AND NON-MONETARY DEFAULTS. It is understood by Borrower that time is of the essence hereof in connection with all obligations of Borrower herein and any of the other Loan Documents.

Lender, at its sole option, may declare the Loan, as well as all other monies secured or evidenced hereby or by any of the other Loan Documents, including, without limitation, all Prepayment Premiums (to the extent permitted by the Laws of the State) and late payment charges, to be in default and forthwith due and payable in the event:

(a)    Borrower defaults in the payment of the Note, whether of principal or interest, or both, or in the payment of any other sums of money referred to herein or in the Note or in any of the other Loan Documents, promptly and fully when the same shall be due, without notice or demand from Lender to Borrower in regard to such Monetary Default (as hereinafter defined).

(b)    Borrower breaches or defaults on any of the terms, covenants, conditions and agreements of the Note, this Deed of Trust or any other Loan Documents; or in the event that each and every one of said terms, covenants, conditions and agreements is not otherwise either duly, promptly and fully discharged or performed, and any such Non-Monetary Default (as hereinafter defined) remains uncured for a period of thirty (30) days after Written Notice thereof has been delivered from Lender to Borrower; unless such Non-Monetary Default cannot be cured within said thirty (30)-day period, in which event Borrower shall have a reasonable period of time to complete cure, provided that action to cure such Non-Monetary Default is promptly commenced within said thirty (30)-day period, and Borrower is, in Lender's sole judgment, not diminishing or impairing the value of the Property and is diligently pursuing a cure to completion, but in no event longer than ninety (90) days.

(c)    Any representation or warranty of Borrower or of its members, general partners, principals, affiliates, agents or employees, made herein or in any other Loan Document, in any

9

guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Lender shall have been false or misleading in any material respect when made.

(d)    Any seizure or forfeiture of the Property, or any portion thereof, or Borrower's interest therein, resulting from criminal wrongdoing or other unlawful action of Borrower, its affiliates, or any tenant in the Property under any federal, state or local law.

(e)    Any default occurs in the performance of any covenant or obligation of Borrower or any other party under any indemnity or guaranty delivered to Lender in connection with the Loan and such default continues beyond the expiration of applicable notice and cure periods.

Upon the occurrence of any one of the above events, and at the option of Lender, the principal of and the interest accrued on the Loan and all other sums secured by this Deed of Trust and the other Loan Documents shall immediately become due and payable as if all of said sums of money were originally stipulated to be paid on such day. In addition, Lender may avail itself of all rights and remedies provided by law or equity, and may foreclose or prosecute a suit at law or in equity as if all monies secured hereby had matured prior to its institution, anything in this Deed of Trust or any of the other Loan Documents to the contrary notwithstanding. Lender shall have no obligation to give Borrower notice of, or any period to cure, any Monetary Default or any Incurable Default (as hereinafter defined) prior to exercising its rights, powers, privileges and remedies.

As used herein, the term "Monetary Default" shall mean any default which can be cured by the payment of money such as, but not limited to, the payment of principal and interest due under the Note, or the payment of taxes, assessments and insurance premiums when due as provided in this Deed of Trust. As used herein, the term "Non-Monetary Default" shall mean any default that is not a Monetary Default or an Incurable Default. As used herein, the term "Incurable Default" shall mean either: (i) any voluntary or involuntary sale, assignment, mortgaging, encumbering or transfer of the Property or ownership interests in Borrower in violation of the covenants contained herein or any of the other Loan Documents; or (ii) if Borrower or any person or entity comprising Borrower should breach any of the provisions of this Deed of Trust.

The failure or omission on the part of Lender to exercise the option for acceleration of maturity of the Note and foreclosure of this Deed of Trust following any default as aforesaid or to exercise any other option or remedy granted hereunder to Lender when entitled to do so in any one or more instances, or the acceptance by Lender of partial payment of the Loan, whether before or subsequent to Borrower's default hereunder, shall not constitute a waiver of any such default or the right to exercise any such option or remedy, but such option or remedy shall remain continuously in force. Acceleration of the maturity of the Note, once claimed hereunder by Lender, at the option of Lender, may be rescinded by written acknowledgment to that effect by Lender, but the tender and acceptance of partial payments alone shall not in any way either affect or rescind such acceleration of maturity, nor act as a waiver, accord and satisfaction, modification, novation or similar defense.

17.    FORECLOSURE. Upon the occurrence of a default hereunder, Lender may declare a violation of any of the covenants hereof and elect to advertise the Property for sale and demand such sale. Then, upon filing notice of such election and demand for sale with the Trustee, the Trustee shall proceed to foreclose this Deed of Trust as a deed of trust as provided by applicable Colorado law. The Trustee shall sell and dispose of the Property and all the right, title and interest of Borrower, and its successors and assigns therein, at public auction as provided by applicable law of the State. Such sale(s) shall be a perpetual bar, both in law and equity, against Borrower and its successors and assigns, and all other persons claiming the Property or any part thereof by, through, from or under

10

Borrower. This instrument shall be effective as a mortgage as well as a deed of trust and upon the occurrence of a default, may be foreclosed as to any of the Property as a mortgage or in any manner permitted by the Laws of the State. The Property may be sold in one parcel, several parcels or groups of parcels as Lender may direct, and Lender shall be entitled to bid at the sale and, if Lender is the highest bidder for the Property or any part or parts thereof, Lender shall be entitled to purchase the same.

18.   <u>PROTECTION OF LENDER'S SECURITY.</u> To the extent permitted by applicable law, Borrower shall not and will not apply for or avail itself of any appraisement, valuation, stay, extension or exemption laws, or any so-called "Moratorium Laws", now existing or hereafter enacted, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, but hereby to the extent permitted by applicable law, waives the benefit of such laws. Borrower for itself and all who may claim through or under it waives any and all right to have the property and estates comprising the Property marshaled upon any foreclosure of the lien hereof and agrees that any court having jurisdiction to foreclose such lien may order the Property sold as an entirety. To the extent permitted by applicable law, Borrower further waives and releases (a) all errors, defects and imperfections in any proceedings instituted by Lender under the Note, this Deed of Trust or any of the other Loan Documents; (b) all benefits that might accrue to Borrower by virtue of any present or future laws exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale under civil process, or extension, exemption from civil process or extension of time for payment; and (c) all notices not specifically required by this Deed of Trust of default, or of Lender's exercise, or election to exercise, any option under this Deed of Trust. At any time after default hereunder, Lender, or Lender's agents or contractors, is authorized, without notice and in Lender's sole discretion, to enter upon and take possession of the Property or any part thereof, and to perform any acts which Lender deems necessary or proper to conserve the security interest herein intended to be provided by the Property, to operate any business or businesses conducted thereon, and to collect and receive all Rents thereof and therefrom, including those past due as well as those accruing thereafter.

19.   <u>APPOINTMENT OF RECEIVER.</u> If, at any time after a default hereunder, Lender deems, in Lender's sole discretion, that a receivership may be necessary to protect the Property or its Rents, whether before or after maturity of the Note and whether before or at the time of or after the institution of foreclosure or suit to collect the Loan or to enforce this Deed of Trust or any of the other Loan Documents, Lender, as a matter of strict right and regardless of the value of the Property or the amounts due hereunder or secured hereby, or of the solvency of any party bound for the payment of such indebtedness, shall have the right, upon ex parte application and without notice to anyone, and by any court having jurisdiction, to the appointment of a receiver to take charge of, manage, preserve, protect and operate the Property; to collect the Rents thereof; to make all necessary and needful repairs; to pay all taxes, assessments, insurance premiums and other such charges against and expenses of the Property; to sell the Property through a receiver's sale, subject to appropriate approval of the receivership court; and to do such other acts as may by such court be authorized and directed; and after payment of the expenses of the receivership and the management of the Property, to apply the net proceeds of such receivership in reduction of the Loan or in such other manner as the said court shall direct notwithstanding the fact that the amount owing thereon may not then be due and payable or the said Loan is otherwise adequately secured. Such receivership shall, at the option of Lender, continue until full payment of all sums hereby secured, until sale of the Property by the receiver, or until title to the Property shall have passed by sale under this Deed of Trust. Borrower hereby specifically waives its right to object to the appointment of a receiver as aforesaid and hereby expressly agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender.

11

20.    RIGHTS AND REMEDIES CUMULATIVE; FORBEARANCE NOT A WAIVER.
The rights and remedies herein provided are cumulative, and Lender, as the holder of the Note and of every other obligation secured hereby, may recover judgment thereon, issue execution therefor and resort to every other right or remedy available at law or in equity, without first exhausting any right or remedy available to Lender and without affecting or impairing the security of any right or remedy afforded hereby, and no enumeration of special rights or powers by any provisions hereof shall be construed to limit any grant of general rights or powers, or to take away or limit any and all rights granted to or vested in Lender by law or equity. Borrower further agrees that no delay or omission on the part of Lender to exercise any rights or powers accruing to it hereunder shall impair any such right or power, or shall be construed to be a waiver of any such default hereunder or an acquiescence therein; and every right, power and remedy granted herein or by law or equity to Lender may be exercised from time to time as often as Lender deems expedient.

Lender may resort to any security given by this Deed of Trust or to any other security now existing or hereafter given to secure the payment of the Loan, in whole or in part, and in such portions and in such order as may seem best to Lender in its sole discretion, and any such action shall not be considered as a waiver of any of the rights, benefits, liens or security interests evidenced by this Deed of Trust. To the full extent Borrower may do so, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force pertaining to the rights and remedies of sureties or providing for any appraisement, valuation, stay, extension or redemption, and Borrower, for Borrower and Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the Loan, notice of election to mature or declare due the whole of the Loan and all rights to a marshaling of the assets of Borrower, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and security interests hereby created. Borrower shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents or other matters whatever to defeat, reduce or affect the right of Lender under the terms of this Deed of Trust to a sale of the Property for the collection of the Loan without any prior or different resort for collection, or the right of Lender under the terms of this Deed of Trust to the payment of such indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatever. If any law referred to in this Section and now in force, of which Borrower or Borrower's heirs, devisees, representatives, successors and assigns and such other persons claiming any interest in the Property might take advantage despite this Section, shall hereafter be repealed or cease to be in force, such law shall not thereafter be deemed to preclude the application of this Section. Notwithstanding the existence of any other liens or security interests or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which the indebtedness secured hereby is satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Deed of Trust and any party who now or hereafter acquires a lien or security interest in the Property and who has actual or constructive notice of this Deed of Trust hereby expressly waives and relinquishes any and all rights to demand or require the marshaling of liens or the marshaling of assets by Lender in connection with the exercise of any of the remedies provided herein or permitted by applicable law. Borrower expressly waives and relinquishes any and all rights and remedies Borrower may have or be able to assert by reason of laws relating to the rights and remedies of sureties or guarantors.

21.    MODIFICATION NOT AN IMPAIRMENT OF SECURITY. Lender, without notice and without regard to the consideration, if any, paid therefor, and notwithstanding the existence at that

12

time of any inferior mortgages, deeds of trust, or other liens thereon, may release any part of the security described herein or may release any person or entity liable for the Loan without in any way affecting the priority of this Deed of Trust, to the full extent of the Loan remaining unpaid hereunder, upon any part of the security not expressly released. Lender may, at its option and within Lender's sole discretion, also agree with any party obligated on the Loan or having any interest in the security described herein, to extend the time for payment of any part or all of the Loan, and such agreement shall not, in any way, release or impair this Deed of Trust, but shall extend the same as against the title of all parties having any interest in said security, which interest is subject to this Deed of Trust.

22.    <u>MODIFICATION NOT A WAIVER.</u> In the event Lender (a) releases, as aforesaid, any part of the security described herein or any person or entity liable for the Loan; (b) grants an extension of time for the payment of the Note; (c) takes other or additional security for the payment of the Note; or (d) waives or fails to exercise any rights granted herein, in the Note or any of the other Loan Documents, any said act or omission shall not release Borrower, subsequent purchasers of the Property or any part thereof, from any obligation or any covenant of this Deed of Trust, the Note or any of the other Loan Documents, nor preclude Lender from exercising any right, power or privilege herein granted or intended to be granted in the event of any other default then made or any subsequent default.

23.    <u>TRANSFER OF PROPERTY OR CONTROLLING INTEREST IN BORROWER.</u> Without the prior written consent of Lender, the sale, transfer, assignment or conveyance of all or any portion of the Property, or the transfer, assignment or conveyance of a controlling interest in Borrower or its general partner, whether voluntary or by operation of law, without the prior written consent of Lender, shall constitute a default hereunder, and entitle Lender, at Lender's sole option, to accelerate all sums due on the Note.

24.    <u>FURTHER ENCUMBRANCE PROHIBITED; SUBROGATION.</u> So long as the Note remains unpaid, Borrower shall not, either voluntarily or involuntarily, permit the Property or any part thereof to become subject to any secondary or subordinate lien, mortgage, deed of trust, security interest or encumbrance of any kind whatsoever without the prior written consent of Lender, and the imposition of any such secondary lien, mortgage, including mezzanine financing with respect to Borrower, any entity comprising Borrower or Borrower's parent entities, deed of trust, security interest or encumbrance without the approval of Lender shall constitute a default hereunder, and entitle Lender, at Lender's sole option, to declare the outstanding principal balance of the Note, all accrued and unpaid interest thereon, late payment charges and any other amounts secured hereby to be and become immediately due and payable in full. In the event that Lender shall hereafter give its written consent to the imposition of any such secondary lien, mortgage, deed of trust, security interest or other encumbrance upon the Property, Lender, at Lender's sole option, shall be entitled to accelerate the maturity of the Note and exercise any and all remedies provided and available to Lender hereunder and in the other Loan Documents in the event that the holder of any such secondary lien or encumbrance shall institute foreclosure or other proceedings to enforce the same; it being understood and agreed that a default under any instrument or document evidencing, securing or secured by any such secondary lien or encumbrance shall be and constitute a default hereunder. In the event all or any portion of the proceeds of the Loan are used for the purpose of retiring debt or debts secured by prior liens on the Property, Lender shall be subrogated to the rights and lien priority of the holder or holders of the lien or liens so discharged.

25.    <u>CONVEYANCE OF MINERAL RIGHTS PROHIBITED.</u> Borrower agrees that the making of any oil, gas or mineral lease, or the sale or conveyance of any mineral interest or right to explore for minerals under, through or upon the Property, would impair the value of the Property, and

13

that Borrower shall have no right, power or authority to lease the Property, or any part thereof, for oil, gas or other mineral purposes, or to grant, assign or convey any mineral interest of any nature, or the right to explore for oil, gas and other minerals, without first obtaining Lender's express written permission therefor, which permission shall not be valid until recorded among the Public Records of Douglas County, in the State. Borrower further agrees that if Borrower shall make, execute, or enter into any such lease or attempt to grant any such mineral rights without such prior written permission of Lender, then Lender shall have the option, without notice, to declare the same to be a default hereunder, and to declare the Loan immediately due and payable in full. Whether or not Lender shall consent to such lease or grant of mineral rights, Lender shall receive the entire consideration to be paid for any such lease or grant of mineral rights, with the same to be applied to the Loan notwithstanding the fact that the amount owing thereon may not then be due and payable or that the Loan is otherwise adequately secured; provided, however, that the acceptance of such consideration shall in no way impair the lien of this Deed of Trust on the Property or cure any existing Monetary Default.

26.   CROSS-DEFAULT. The Note is also secured by the terms, conditions and provisions of the Collateral Assignment and, additionally, may be secured by contracts or agreements of guaranty or other security instruments. The terms, covenants, conditions and agreements of each security instrument shall be considered a part hereof as fully as if set forth herein verbatim. Any default under this Deed of Trust or any of the other Loan Documents shall constitute a default hereunder and under each of the other Loan Documents. Notwithstanding the foregoing, the enforcement or attempted enforcement of this Deed of Trust or any of the other Loan Documents now or hereafter held by Lender shall not prejudice or in any manner affect the right of Lender to enforce any other Loan Document; it being understood and agreed that Lender shall be entitled to enforce this Deed of Trust and any of the other Loan Documents now or hereafter held by it in such order and manner as Lender, in its sole discretion, shall determine.

27.   FUTURE ADVANCES SECURED. This Deed of Trust shall secure not only existing indebtedness, but also future advances, whether such advances are obligatory or to be made at the option of Lender. Upon the request of Borrower, and at Lender's option prior to release of this Deed of Trust, Lender may make future advances to Borrower. All future advances with interest thereon shall be secured by this Deed of Trust to the same extent as if such future advances were made on the date of the execution of this Deed of Trust unless the parties shall agree otherwise in writing, but the total secured indebtedness shall not exceed at any one time a maximum principal amount equal to double the face amount of the Note plus interest and costs of collection, including court costs and Reasonable Attorneys Fees. Any advances or disbursements made for the benefit or protection of or the payment of taxes, assessments, levies or insurance upon the Property, with interest on such disbursements as provided herein, shall be added to the principal balance of the Note and collected as a part thereof. To the extent that this Deed of Trust may secure more than one note, a default in the payment of any such note shall constitute a default in the payment of all such notes.

28.   SUCCESSORS AND ASSIGNS; TERMINOLOGY. The provisions hereof shall be binding upon Borrower and the heirs, personal representatives, trustees, successors and assigns of Borrower, and shall inure to the benefit of Lender, its successors and assigns. Where more than one Borrower is named herein, the obligations and liabilities of said Borrower shall be joint and several.

Wherever used in this Deed of Trust, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein: (a) the word "Borrower" shall mean Borrower and/or any subsequent owner or owners of the Property; (b) the word "Lender" shall mean Lender or any subsequent holder or holders of this Deed of Trust; (c) the word "Note" shall mean the Note(s) secured

14

by this Deed of Trust; and (d) the word "person" shall mean an individual, trustee, trust, corporation, partnership, limited liability company, limited liability partnership, joint venture or unincorporated association. As used herein, the phrase "Reasonable Attorneys' Fees" shall mean fees charged by attorneys selected by Lender based upon such attorneys' then prevailing hourly rates as opposed to any statutory presumption specified by any statute then in effect in the State. As used herein words of any gender shall include all other genders.

29.    NOTICES. All notices, reports, requests or other written instruments required or permitted hereunder shall be in writing, signed by the party giving or making the same, and shall be sent hand-delivered, effective upon receipt, sent by United States Express Mail or by a nationally recognized overnight courier, effective upon receipt, or sent by United States registered or certified mail, postage prepaid, with return receipt requested, deemed effective on the earlier of the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, addressed to the party intended to receive the same at the address set forth below or at such other address as shall be given in writing by any party to another ("Written Notice"):

| | |
|---|---|
| If to Borrower: | Land Securities Investors Ltd.<br>Attn:  Alan R. Fishman<br>8361 N. Rampart Range Rd.<br>Littleton, CO   80125 |
| With a copy to: | Lee M. Kutner<br>Kutner Mill Brinen, P.C.<br>303 East 17th Avenue, Suite 500<br>Denver, CO   80203 |
| To Lender: | TIC Lending, LLC<br>5460 S. Quebec Street, #300<br>Greenwood Village, CO   80111 |
| With a copy to: | Fairfield and Woods, P.C.<br>Attn:  Caroline C. Fuller<br>1700 Lincoln Street, Suite 2400<br>Denver, CO   80203 |

30.    GOVERNING LAW; WAIVER OF JURY TRIAL; SEVERABILITY. THE PARTIES HERETO, TO THE FULL EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES HEREBY THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, AGAINST LENDER, ITS SUCCESSORS AND ASSIGNS, BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS, THE LOAN OR ANY COURSE OF CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, LENDER'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH

LENDER), IN CONNECTION WITH THE LOAN OR THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, IN ANY COUNTERCLAIM WHICH ANY PARTY MAY BE PERMITTED TO ASSERT THEREUNDER, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. IN NO EVENT SHALL LENDER, ITS SUCCESSORS, ASSIGNS OR PARTICIPANTS BE LIABLE FOR SPECIFIC PERFORMANCE, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, LOSS OF BUSINESS PROFITS OR OPPORTUNITY) AND BY ITS EXECUTION HEREOF, BORROWER WAIVES ANY RIGHT TO CLAIM OR SEEK ANY SUCH DAMAGES. This Deed of Trust and the rights and obligations of the parties hereunder shall be governed by, and construed in accordance with, the internal laws of the State, without regard to principles of conflicts of laws. The parties hereto irrevocably (a) agree that any suit, action or other legal proceeding arising out of or relating to this Deed of Trust may be brought in a court of record in the State or in the courts of the United States of America located in such State, (b) consent to the non-exclusive jurisdiction of each such court in any suit, action or proceeding, and (c) waive any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. If any clauses or provisions herein contained operate, or would prospectively operate, to invalidate this Deed of Trust, then such clauses or provisions only shall be held for naught, as though not herein contained, and the remainder of this Deed of Trust shall remain operative and in full force and effect.

31.   RIGHTS OF LENDER CUMULATIVE. The rights of Lender arising under the terms, covenants, conditions and agreements contained in this Deed of Trust shall be separate, distinct and cumulative, and none of them shall be in exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provisions, anything herein or otherwise to the contrary notwithstanding. If Borrower is comprised of more than one person or entity, then the liability of each such person and entity hereunder shall be joint and several.

32.   MODIFICATIONS. This Deed of Trust cannot be changed, altered, amended or modified except by an agreement in writing and in recordable form, executed by both Borrower and Lender.

33.   LENDER IS NOT A JOINT VENTURER OR PARTNER. Borrower and Lender acknowledge and agree that in no event shall Lender be deemed to be a partner or joint venturer with Borrower or any member of Borrower. Without limitation of the foregoing, Lender shall not be deemed to be a partner or joint venturer on account of its becoming a mortgagee in possession or exercising any rights pursuant to this Deed of Trust or pursuant to any other instrument or document evidencing or securing any of the indebtedness secured hereby, or otherwise.

34.   CAPTIONS. The captions set forth at the beginning of the various Sections of this Deed of Trust are for convenience only and shall not be used to interpret or construe the provisions of this Deed of Trust.

35.   REPLACEMENT DOCUMENTS. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower, at its expense, will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or

mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

36. <u>SOLE DISCRETION OF LENDER.</u> Wherever pursuant to this Deed of Trust Lender exercises any right given to it to approve or disapprove, or any arrangement or term is to be satisfactory to Lender, the decision of Lender to approve or disapprove or to decide that arrangements or terms are satisfactory or not satisfactory shall be in the sole discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

IN WITNESS WHEREOF, Borrower has caused this Deed of Trust to be executed as of the day and year first above written.

Land Securities Investors Ltd.

By:   Sunset Management Services, Inc., General Partner

By:   _____
Alan R. Fishman, President

STATE OF _____ §

§   ss.

COUNTY OF _____ §

     The foregoing instrument was acknowledged before me this _____ day of 2013, by Alan R. Fishman, as President of Sunset Management Services, Inc., General Partner of Land Securities Investors, Ltd.

     Witness my hand and official seal.

     My commission expires: _____

                            Notary Public

                          _____

Recorded at the Request of and When Recorded Return to:

Fairfield and Woods, P.C.
Attn:   Caroline C. Fuller
1700 Lincoln Street, Suite 2400
Denver, CO   80203-4524

18

<u>Exhibit A</u>

Lot 119A-3, Chatfield Farms, Filing 1-A 3rd Amd
Douglas County, Colorado

A-1

Exhibit B

*2006, 2007, and 2012 Real Property Taxes*

A-2